# Pearson's Estate.

*Decedents' estates — Legacies — Interest on legacies — Wills — Construction.*

1. Interest on a legacy will be payable, either from the date of the testator's death, or from one year thereafter, depending upon the relation in which the testator stood or which he assumed toward the object of his bounty. If the legacy is coupled with an intention to maintain or educate the legatee, so that it appears that the testator assumed to stand in loco parentis towards the legatee, interest on the legacy will accrue from the date of testator's death; but if the legacy is uncoupled from such intention, interest will begin to run from one year after the death of the testator.

2. Where a testator bequeathed a sum of money in trust for the benefit of his niece, said sum "to be paid by my executors and trustees at their discretion and as they may determine to be for

her advantage, for her education and maintenance, or to start her in business," the intention of the testator to stand in loco parentis toward his niece was disclosed and the court properly decided that the legacy bore interest from the date of testator's death.

Argued Oct. 15, 1915.  Appeal, No. 164, Oct. T., 1915, by Aline L. Rabe, executrix and residuary legatee, from decree of O. C. Allegheny Co., June T., 1914, No. 137, on bill of review, In re Estate of Frank Pearson, Deceased.  Before Brown, C. J., Mestrezat, Potter, Stewart and Frazer, JJ.  Affirmed.

Bill of review for the reopening of an adjudication.

The facts appear in the following opinion of Trimble, J.:

The question involved is whether a legacy bears interest, and, if so, whether it accrues from the date of the death of the testator, or from one year thereafter.

Frank Pearson executed his last will and testament on the 28th of November, 1906, and died October 6, 1907.

The eleventh paragraph of his will is:

"I give, devise and bequeath to my executors and trustees the sum of five thousand ($5,000) dollars, to be held in trust for my niece, Maud Pearson, said sum to be paid by my executors and trustees at their discretion, and as they may determine to be for her advantage, for her education and maintenance, or to start her in business."

The debts were all paid before the final account was filed, and it shows a balance far in excess of any sum necessary to pay the legacies.

Before the audit of the final account the Sewickley Valley Trust Company was appointed guardian of Maud Pearson, who is about twelve years old; but her guardian had no notice of the audit, except the formal advertisement.  At the audit the guardian did not appear; but the decedent's widow who is the residuary legatee, opposed the payment of any interest on the legacy given

to the testator's niece. A decree was entered by which the amount of legacy, without interest and less the collateral inheritance tax, was awarded to the guardian on July 14, 1914. After making fruitless efforts with the representatives of the estate to adjust the interest, the guardian filed a bill of review on January 22, 1915, praying that the decree of July 14, 1914, be opened and for such other order respecting the trust fund as the minor is entitled to have made, and as to justice and equity appertains.

The legacy to Maud Pearson is vested. It is not dependent upon a time and event which controls the payment, and therefore contingent, as illustrated in Duffey v. Presbyterian Congregation of Bellefonte, 48 Pa. 46, and since it is not a contingent legacy, interest has accrued on it from the time when the legacy fell due. If the time of payment is not deferred, as in Gunning's Estate (No. 3), 234 Pa. 148, the interest will be payable either from the date of the testator's death, or one year thereafter, depending upon the relation in which the donor stood, or which he assumed toward the object of his bounty: Jacoby's Est., 204 Pa. 188. If the legacy is a mere benefaction, uncoupled from an intention to maintain or educate the legatee the interest will begin to run from one year after the death of the testator; but if he assumed to stand in loco parentis to the child, it will accrue from the date of his death. There is no doubt that it is not payable at the convenience of the executors. It is payable absolutely, but at the trustees' discretion, as they may determine to be for the advantage of the legatee, and for her education and maintenance, or to start her in business. The trustees were obliged to pay, and the discretion with which they were invested was legal and not arbitrary. While the court will not substitute their discretion for that of the trustees, nevertheless it is an imperative power; it is legal and not capricious, and must be honestly and reasonably exercised, and when there is an abuse, the courts will

correct it: See note to Section 511, 2d Vol., 6th Ed., Perry on Trusts and Trustees; and Gochenauer v. Froelich, 8 Watts 19, 23, where in construing a discretionary power the Supreme Court said: There are cases where a claimant is entitled to the whole of his demand, as much as to any part of it; and there are cases where a part may properly be allowed and not the whole." "A person in loco parentis to a child is a person who means to put himself in the situation of a lawful father of the child with reference to the father's office and duty of making provision for the child": Robinson's Est., 35 Pa. Superior Ct. 192. In this case the testator's nephew received a legacy upon which interest was allowed from the testator's death. See also Cooper v. Scott, 62 Pa. 139; Seibert's App., 19 Pa. 49, and Corbin v. Wilson, 2 Ashmead 178, where it is said that the intention of the testator to stand in loco parentis must be gathered from the whole will.

Maud Pearson was about five years old when her uncle died and left her this legacy. The purpose of the gift, shown by his unequivocal language, was inspired by a solicitude for her nothing less than parental. "For her education, maintenance, or to start her in business" were his own words in directing how the trustees should spend the legacy. He not only makes the gift, but shows his anxiety for the child's future, by directing its expenditure in the essentials of life; by his own language he places himself in loco parentis to this young girl, and the result is that the legacy given to her will bear interest from the date of his death.

It is not tenable to argue that interest is not payable because the estate did not have sufficient funds to pay the same until a long time after the death of the testator, for in Huston's App., 9 Watts 472, 477, it is said: "Even though a legacy is to come out of a part of the testator's estate which cannot be recovered for a long time after the year, and the testator directs the legacy to be paid when the money which is to constitute it can be re-

Opinion of Court below—Opinion of the Court. [251 Pa.

covered, still the payment of interest, if practicable, or at least the computation of it, will commence from the end of the year after the testator's death."

The court awarded the relief prayed for in the bill. Aline L. Rabe, executrix and residuary legatee, appealed.

*Error assigned* was the decree of the court.

*F. C. McGirr,* with him *John E. Laughlin,* for appellant.

*R. T. M. McCready,* for appellee.

PER CURIAM, January 3, 1916:

No error was committed by the court below in opening its decree of July 14, 1914, and the award of interest on the legacy to Maud Pearson is affirmed at appellant's costs on the opinion of the auditing judge directing it to be allowed.