[L. A. No. 7892. In Bank.—April 13, 1925.]

In the Matter of the Estate of EMMA E. DARE, Deceased. FRANK W. SPONABLE, Appellant, v. DOREENE DARE, Respondent.

[1] ESTATES · OF DECEASED PERSONS — WILL — TRUSTS — INCOME OF TRUST PROPERTY—TIME OF PAYMENT.—Where the will of a deceased person provided for the distribution of the entire residue of the estate, after the payment of the expenses of administration and of certain specific legacies, to a trustee upon certain trusts, but no provision was made therein for payment of any income or principal of the estate to the beneficiary of the trust prior to distribution, the beneficiary was not entitled to be paid any income until after the trust property passed into the hands of the trustee upon distribution of the estate; and at distribution no issue was presentable as to what portion of the income the beneficiary would be entitled to, nor the date from which it should be paid.

[2] ID.—DISTRIBUTION—MATTERS DETERMINED UPON.—In such a case nothing was concluded by the decree of distribution, except the correctness of the executor's account and the amount of the residue of the estate to be distributed to the trustee.

[3] ID.—ADOPTED CHILD—STATUS OF—CONSTRUCTION OF WILL.—Where a testatrix in her will refers to a beneficiary of the trust therein created as her "adopted daughter" and the record otherwise shows that the latter stood in this relation to the testatrix, the beneficiary is to be regarded, in attempting to interpret the terms of the will, precisely as though she was the natural offspring of the testatrix.

[4] ID.—TRUSTS—PROVISION FOR MAINTENANCE.—Where a will created a trust in the residue of the estate of the deceased, providing that the trustee should pay all of the income of the trust property in equal monthly payments to the adopted daughter of the decedent

until she arrived at a certain age, at which time she was to receive half the trust property, and thereafter she was to be paid all of the income on the balance until she reached a certain age, when she was to take all of the remainder of the property, and the evidence showed that the beneficiary had been supported by the decedent and her husband prior to their deaths and that she had no means of her own, nor any other source of support or income than that so provided, aside from her own earnings, the trust provision should be construed as intended for the maintenance of the beneficiary.

[5] ID.—RIGHT TO INCOME—TIME.—In such a case, the trust provision being one for maintenance, the beneficiary's right to the income to be derived from the trust properties related back to the death of the testatrix.

[6] ID.—ATTORNEY'S FEES AND EXECUTOR'S COMMISSIONS—WHAT PAYABLE OUT OF.—In such a case, the attorney's fees and executor's commissions, being expenses of administration and payable prior to distribution of the estate to the trustee, were not any part of the residue of the estate distributable to the trustee, and were chargeable against and payable from the *corpus* of the estate as distinguished from the income thereof, at least in the absence of a showing that the substance of the estate in the hands of the executor was not ample for payment of these expenditures.

[7] ID.— EXPENDITURES OF TRUSTEE — CARE OF TRUST PROPERTY.— Where the trust in such a case provided that upon the death of the main beneficiary before arriving at the age at which she was to take half of the trust property, or thereafter before reaching the age at which she was to take the balance thereof, such beneficiary was in a position analogous to that of a life tenant, whose income from the trust property was chargeable with the ordinary expenses of administering the trust, but the unusual and extraordinary expenses, particularly where they went to enhance the value of the capital itself, were payable out of the capital rather than out of the income thereof.

(1) 24 C. J., p. 474, n. 75. (2) 24 C. J., p. 529, n. 4. (3) 40 Cyc., p. 1452, n. 39. (4) 40 Cyc., p. 1633, n. 39. (5) 40 Cyc., p. 1800, n. 75. (6) 39 Cyc., p. 486, n. 56. (7) 39 Cyc., p. 479, n. 14.

APPEAL from an order of the Superior Court of Santa Barbara County disapproving in certain respects the report and account of a testamentary trustee. S. E. Crow, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harry W. T. Ross for Appellant.

E. W. Squier and Schauer & Ryon for Respondent.

RICHARDS, J.—This appeal is from an order of the superior court in and for the county of Santa Barbara disapproving in certain respects the report and account of one Frank W. Sponable as trustee under and by virtue of the will of Emma E. Dare, deceased, which said order was made and entered on July 18, 1923, pursuant to certain findings of fact and conclusions of law on that date made and filed in said court. The appeal is by said trustee and presents to this court for its determination certain questions respecting the correctness of the conclusions of law of said court, which formed the basis of said order, and of the order itself. The facts are undisputed and are briefly these: Emma E. Dare died in the city of Santa Barbara on or about the twenty-first day of July, 1920, leaving estate therein and also in the state of Kansas, of which latter state she had been a resident prior to her becoming a resident of California shortly before her death. On June 3, 1920, she had made her last will, which was offered and admitted to probate in the county of Santa Barbara upon her decease therein. By the terms of her said will, after making certain specific bequests, she devised all the rest and residue of her estate to Frank W. Sponable of Paola, Kansas, as trustee; or, in the event of his death prior to the death of the testatrix or of his failure or refusal to accept the trust, then to John L. Hunt of Topeka, Kansas, upon certain trusts as set forth in said will, among which were the following: "(a) To pay to my adopted daughter Doreene Dare, formerly Doreene Steer, all of the income thereof in equal monthly payments as nearly as may be until she, the said Doreene Dare shall reach the age of thirty-five years, and then on her thirty-fifth birthday to pay, assign, convey and turn over to her one-half of all of the property so held in trust, together with all of the income thereof, if any, which shall not theretofore have been paid to her as hereinbefore provided; and thereafter and after the thirty-fifth birthday of her, the said Doreene Dare, to pay to her in like equal monthly payments all of the income of the remainder of said trust property until she, the said Doreene Dare, shall reach the age of forty-five years, and on her forty-fifth birthday to pay, assign, and convey and turn over to her, the said

Doreene Dare, all of the remainder of said trust property, together with all of the income thereof which shall then have accumulated and which shall not have been theretofore paid over to her." The will then proceeds to attempt to provide against any assignment of the income or principal of the devised property by Doreene Dare and against any attachment or garnishment being recognized or satisfied out of said property. The will then provides as follows: "(c) In case the said Doreene Dare shall not survive the age of forty-five years, then I direct that the income from one-half of the property which shall have come into the hands of said trustee and shall still remain in his hands shall be paid to my great nephew Thomas Dare Ball of Darlow, Kansas, in equal quarterly payments until the said Thomas Dare Ball shall reach the age of twenty-five years." The will then provides for the payment over to said Thomas Dare Ball of one-half of the substance of said property under certain contingencies, and further provides that in the event said Thomas Dare Ball should not survive said Doreene Dare and that the latter died before attaining the age of forty-five years, the one-half of the property should go to two other relatives named, or the survivor of them. As to the remaining one-half of said property it was, in the event of Doreene Dare not surviving the testatrix or not attaining the age of forty-five years, to be turned over to a certain cemetery association for certain specified purposes; and in the event such association was not in existence, to her relatives to whom the other half of the property was to come, for like purposes. The will of the decedent was duly presented for and admitted to probate in said court by Frank W. Sponable, the executor named therein, and administration was thereafter had thereon and upon said estate; and thereafter in due course the said executor presented and filed his first and final account, together with a petition for the distribution of the residue of the estate to himself as the trustee named in said will and upon the trusts set forth therein. This account of the executor contained a detailed statement of the money and property of the estate which had come into his hands as such executor and of the expenditures made by him therefrom, of the claims which had been presented, filed and paid and of the balance of cash on hand and subject to distribution. A hearing was had upon said account and petition for distribution after due and legal notice thereof, and there

being no objection offered at said hearing to said account or to the decree of distribution of said estate as prayed for, the court proceeded to settle said executor's account and to make distribution of the residue of said estate. In so doing the court found that the said executor was entitled to an allowance of the sum of $1,058.56 for his commissions as such executor and that his attorney of record in the probate of said estate was also entitled to an allowance of the sum of $1,058.56 for his fees as such attorney. The court directed the payment of these respective sums out of the estate in the hands of the executor and further ordered and decreed that the whole of the residue of said estate subject to the payment of the above allowances be distributed to Frank W. Sponable as trustee and upon the trusts set forth in said will, and which were also set forth *in haec verba* in said decree. The decree contained a specific description of the residue of said estate thus distributed, which showed as cash on hand and subject to such distribution the sum of $6,218.55 and which sum embraced and included whatever amounts of money had been received by the executor during his administration of said estate as the income thereof accruing between the date of the death of said testatrix and the date of such decree of distribution. This decree of distribution was filed and entered on January 30, 1922, and thereupon the said Frank W. Sponable received the whole of the residue of said estate as trustee in conformity with the terms of said decree of distribution. Thereafter, and on April 19, 1923, in response to a citation issued out of said court and in the matter of said estate, the said trustee appeared and filed his first account and report as such trustee. Notice was duly given of a hearing upon said account and report and upon the date fixed for such hearing said Doreene Dare appeared and filed her exceptions and objections to the account and report of said trustee wherein she set forth some sixteen separate and specific objections thereto and to the settlement and approval thereof. Thereupon, and on May 26, 1923, the said trustee filed a supplemental and more detailed statement of his receipts as such trustee. Thereupon the said Doreene Dare, on May 28, 1923, presented and filed her amended exceptions and objections to the account and report of said trustee. A hearing was had upon the issues as thus presented before the court and the matter being submitted the court, on July 18, 1923, filed its findings of

fact and conclusions of law upon the said issues, and there-upon, and as a part thereof, entered its order and decree in the following terms, viz.:

"It is therefore ordered, adjudged and decreed, that said account and report as amended be and is hereby disapproved and disallowed by the court, and that said trustee be and he is required and directed to file forthwith a full and true account in accordance with the findings of fact and conclusions of law herein, showing the *corpus* of said estate and the income therefrom separately from the date of death of testatrix until the receipt of said trust fund by the said trustee, and that such further account show a full and true account in accordance with the findings of fact and conclusions of law herein from the time of said trustee's receipt of said trust fund to the date of the filing of said account and report as amended; and that said trustee pay over to the beneficiary and contestant, Doreene Dare, just as soon as it can be done without loss to the investments of the trust, the income received from said trust property from the date of testatrix's death to the date of distribution to Frank W. Sponable as trustee herein, without deduction therefrom of either the attorneys' or the executor's fees therein allowed for handling said estate or other expenses of administration of said estate; that said trustee pay over to the beneficiary and contestant Doreene Dare, just as soon as it can be done without loss to the investments of the trust, the income received on said trust funds from date of distribution to Frank W. Sponable, as trustee, without deduction of the expenses found to be extra-ordinary and unusual expenses under paragraph 15 above; and including therein the part of said income which has been re-invested by said trustee; that said trustee pay over to the beneficiary and contestant, Doreene Dare, any other amounts found to be due her under his account submitted in accordance with this decree, and in conclusions herein."

From the foregoing terms of said order and decree, and from the whole thereof, the said trustee has taken and prosecutes this appeal. The appellant presents three points for our consideration upon this appeal: First, whether, after the decree settling the final account and distribution in the estate of Emma E. Dare has become final it can be modified by an order of the court making it in a collateral proceeding; second, whether the income to be paid to the said

Doreene Dare commenced at the death of the testatrix or upon and after the date when the property passed into the hands of the trustee upon the distribution of said estate; third, an interpretation as to what is meant by "income" to be paid by the trustee to the said beneficiary—whether it is "net income" and subject to deductions for the expenses necessary to preserve and care for the substance of the trust estate; or, whether the gross income shall be paid the present beneficiary without such deductions being first made by the trustee. [1] The answer to the first of these questions leads to the primary inquiry as to whether the executor of said decedent's estate was bound by the terms of her said will to pay over to said Doreene Dare any portion of said estate or of the income thereof prior to or at the time of the decree of distribution of the residue of said estate. We look in vain for any provision of the will or of law which imposes such a duty upon him in his capacity as such executor. The will directs the executor thereof to pay the expenses of the decedent's last illness and funeral and to erect a suitable marker over her resting place. It then proceeds to make certain bequests of specific sums of money to be paid to the persons named as the recipients thereof. The executor was bound as a matter of law to provide for the proper administration of said estate and the payment of these bequests during the course thereof. (Civ. Code, secs. 1363–1368.) All the rest and residue of said estate was by the decedent devised to Frank W. Sponable as trustee under the trusts created by the terms of the decedent's said will. That said Frank W. Sponable was also the executor of the decedent's said will and of her estate is an immaterial incident, since in his capacity as executor he was invested with the title to none of the property nor with none of the powers and duties which were to devolve upon him upon the distribution to him of the entire residue of said estate in the capacity of such trustee. This being so, no issue was presented or presentable as to what portion of the income derived from the property of said estate the primary beneficiary of said trust would be entitled to receive from the trustee thereof, nor as to what date the right to such income or any portion thereof was to take its beginning, for the reason that no such trust had been cast upon Frank W. Sponable until the making and the entry of the decree of distribution of said estate to him in the capacity of such

trustee. Had the executor failed or neglected to make a proper accounting of the property of said estate, or of the income thereof, or of the conservation of such income, he could doubtless have been compelled to do so at the instance of the beneficiary of the trust provided for in the decedent's said will, but beyond that she would not have been entitled to go in demanding the payment over to her of any portion of such income prior to the distribution of said estate, for the twofold reason that the entire residue of said estate after the payment of the expenses of administration and of the specific legacies was devised and hence to be distributed to said trustee and that her right to be paid over any portion of such income could not arise until the legal relation of trustee and beneficiary had been established by the decree of distribution. **[2]** It follows necessarily that nothing material to the questions here under consideration was concluded by the terms of the decree of distribution except the correctness of the executor's approved account and the amount of the residue of the estate to be distributed to said trustee. The correctness of the said decree of distribution is not challenged by this proceeding in either of the above respects nor did the trial court in making the order complained of upon this appeal attempt in any particular to alter or vary the terms of said decree. No authority would seem to be required to reinforce these irresistible conclusions, but if any were needed it might be found in the very cogent language of the supreme court of Connecticut in passing upon a precisely similar question. (*Bancroft* v. *Security Co.*, 74 Conn. 218 [50 Atl. 735–737].) It follows that there is no merit in the appellant's first contention.

The second question presented by the appellant is as to whether the income to be paid to said Doreene Dare as the primary beneficiary under the terms of the trust provided for in the decedent's said will commenced as to the time of its allocation from the date of the decedent's death or from the time of the coming of the property of said estate into the hands of the trustee upon its distribution to him as such. This question involves an interpretation of the terms of the decedent's said will with respect to such income. **[3]** It is to be noted that the said testatrix in her said will refers to Doreene Dare as her "adopted daughter" and the record otherwise shows that the latter stood in this relation to the testatrix. This being so she is to be regarded, in attempting

to interpret the terms of this will, precisely as though she was the natural offspring of the testatrix. [4] So regarding her and looking to the other provisions of said will by the terms of which she is made the sole beneficiary and recipient of the income of the residue of the property of said estate coming into the hands of said trustee, we are constrained to the conclusion that the testatrix intended that the said provision in her will should constitute in effect a bequest for the maintenance of her adopted daughter until such time as she should come into the ownership and possession of the entire residue of her said estate under the other terms of her said will. In *Estate of Mackay,* 107 Cal. 303 [40 Pac. 558], wherein the testator bequeathed to his executors in trust the sum of $15,000, directing them to invest the same in such securities as they should deem advisable and pay over the income thereof to one Hattie Schenck, housekeeper, during her life, the court held that the said provision in the testator's will amounted in substance to a bequest for maintenance. It was aided to this conclusion by proof that for several years prior to such provision the beneficiary thereof had been dependent for support and maintenance and had been supported and maintained by him. A similar showing was made in the instant case, the proof and the findings of the court being that the respondent herein was the adopted daughter of the decedent and of her deceased husband and had been supported and maintained by her adopting parents prior to their death, and that she had no means of her own nor any other source of support or income than that provided by her said parents aside from her own earnings. The trial court expressly found that the trust provisions of the decedent's will were intended for the maintenance of respondent. We are of the opinion that this finding is fully justified by the terms of the decedent's said will and by the proofs before the court. The appellant herein strongly relies upon *Estate of Brown,* 143 Cal. 450 [77 Pac. 160], as in point in opposition to this conclusion. There are some points of similarity between the two cases but the dissimilarity between that case and the case of *Estate of Mackay, supra,* and also of this case, furnish the essential points of differentiation between them. In the Brown case the element of past dependence and support was lacking but was present in both the Mackay case and the case at bar. In the Brown case also the element of relation-

ship was wanting which is present in the instant case. In the Brown case also the trial court found upon the evidence before it that the bequest was not one for maintenance, and this court on appeal sustained said finding upon the express ground that the evidence in the case was not before it on appeal. We, therefore, hold that the *Estate of Brown, supra,* is not in point upon this appeal.

[5] This brings us to the next inquiry, which is, conceding these provisions in the decedent's will to amount to a bequest for maintenance, to what date did its intended inception relate, that of the testatrix's death or that of the investment of the trust in the hands of the trustee? By both reason and authority we are compelled to the conclusion that the respondent's right to the income to be derived from the trust properties must be held to have relation to the death of the testatrix. As to the reason of the situation it would seem to follow that if, as we hold, the provision in said will and in the trust clauses thereof were intended by the testatrix to be in the nature of a bequest for the maintenance of her adopted daughter who, as has been shown, had no other means of support except that of her own exertions; and, also, as has been shown, such adopted daughter had theretofore been supported and maintained by her adopting parents during their lifetime, such intention ought to have relation to a time from and after the death of the testatrix, since by that means only could continuity of such maintenance be assured. This conclusion would derive additional and very cogent support from the fact that the adopted daughter of the testatrix is made primarily the sole beneficiary of the entire substance of the residue of the said estate under the terms of said trust. The foregoing reasoning and conclusion are fully supported by the authorities dealing with similar or analogous situations. In 40 Cyc., under the caption of "Income from Residuary Fund," it is stated as "settled by the great weight of authority that in the case of a life estate in a residuary fund or in some aliquot portion thereof, if no time is prescribed in the will for the commencement of the interest or the enjoyment of the use or income of such residue the legatee for life is entitled to the interest or income of the clear residue as afterwards ascertained, to be computed from the death of the testator." The cases cited in support of this statement fully

sustain it. (*Bancroft* v. *Hartford Security Co.*, 74 Conn. 218 [50 Atl. 735]; *Lawrence* v. *Security Co.*, 56 Conn. 423 [1 L. R. A. 342, 15 Atl. 406]; *In re Stanfield's Estate*, 135 N. Y. 292 [31 N. E. 1013]; *Cooke* v. *Meeker*, 36 N. Y. 15; *Davison* v. *Rake*, 44 N. J. Eq. 506 [16 Atl. 227]; *Jesseph* v. *Westerberg*, 92 Wash. 602 [162 Pac. 1004]; *Davis* v. *Brown*, 112 Wash. 121 [191 Pac. 1098].) The rule is similarly stated and supported in Ruling Case Law, volume 28, page 355. The Civil Code, in sections 1368 and 1369, provides:

"Sec. 1368. Legacies are due and deliverable at the expiration of one year after the testator's decease. Annuities commence at the testator's decease.

"Sec. 1369. Legacies bear interest from the time they are due and payable except that legacies for maintenance or to the testator's widow bear interest from the testator's decease."

In the case of *Crew* v. *Pratt*, 119 Cal. 131 [51 Pac. 44], this court said with reference to an annuity to be paid by his trustees to the widow of a testator "for her maintenance" and "as soon after my decease sufficient funds shall come into their possession" that in the absence of an expressed intention to the contrary in the will the annuities should commence at the date of the death of the testator, and that the clause in the will relating "to the time of payment (viz., as soon as they have sufficient funds, etc.) does not relate to the date when the annuity should begin," citing section 1368 of the Civil Code. We are, therefore, satisfied that the trial court upon its finding that the bequest of the income of said estate was "a bequest for maintenance" was not in error in holding that the beneficiary thereof was entitled to receive such income accruing from and after the date of the testatrix's death.

The final question presented for our consideration is as to whether the "income" thus to be paid the beneficiary is to be the *net* income and subject to deductions for the expenses necessary for the care and preservation of the trust estate, or whether the gross income is to be paid over to the beneficiary, leaving said expenses to be provided for out of the substance of the trust estate. [6] Incidental to this inquiry the first question discussed is as to the property or fund out of which the commissions of the executor and the fees of his counsel during the administration of the estate

as allowed by the court in the settlement of the executor's final account and in the decree of distribution are to be paid. Upon the allowance of these items of necessary expense they become a part of the expenses of administration and as such were payable by the administrator prior to the distribution of the estate to the trustee under the terms of the will. They were not, therefore, any part of "the residue" of the estate which was distributable to such trustee. Like the other expenses of administration they were chargeable against and payable from the *corpus* of the estate as distinguished from the income thereof; and if we are correct in holding that the income of the estate from the death of the testatrix was to be paid to the beneficiary it follows that the income was not to be chargeable with these expenditures, at least in the absence of a showing that the substance of the estate in the hands of the administrator was not ample for the payment of these expenditures. [7] A different question is, however, presented with reference to the expenditures of the trustee in caring for and preserving the *corpus* of the trust estate after the same has come into his hands as such trustee. If the primary beneficiary of this trust, Doreene Dare, was to be the ultimate and only recipient of the *corpus* of this estate as well as of the income thereof, the question would be somewhat simplified. But she is not. Under the terms of the will she is given one-half of the trust estate when and if she shall reach the age of thirty-five years and she is to receive the other half thereof only when and if she shall reach the age of forty-five years. Until she attains these respective ages she has nothing other than a life interest in the properties of the estate and in the income thereof, and is thus in a position analogous to that of a life tenant in the whole *corpus* of said estate until she attains the age of thirty-five years and in the remaining one-half thereof until she attains the age of forty-five years. In case of her death before she is thirty-five the entire estate goes to others, subject to the trust; and if she lives so long but dies between that age and forty-five the one-half thereof goes elsewhere. Being thus in a position analogous to that of a life tenant the principles of law applicable to the duty of a life tenant to pay out of her income from the body of the estate the taxes and other annual charges which are necessary to be paid in order to the preservation of the property thereof would be applicable to her. Section 840 of

the Civil Code provides that "The owner of a life estate must keep the buildings and funds in repair from ordinary waste and must pay the taxes and other annual charges and a just proportion of extraordinary assessments benefiting the whole inheritance." In the case of *Huddleston* v. *Washington*, 136 Cal. 514 [69 Pac. 146], it was held that a remainderman might invoke the aid of equity to compel a life tenant to apply the rents of the property to the payment of delinquent taxes which, being unpaid, were endangering the remainderman's estate. In *Estate of Gartenlaub*, 185 Cal. 648 [24 A. L. R. 1, 197 Pac. 90], which was the case of an estate devised in trust, wherein the trustee was to convert the estate into money and invest the same in certain described bonds, and was by the terms of the will directed to pay to the testator's widow monthly during her lifetime three-fourths of the entire net income, revenue and profit of every kind arising from said estate, this court held that a premium which the trustee was to pay upon the purchase of certain bonds was to be paid out of the income and not out of the *corpus* of the estate, and in so holding this court pertinently said: "A testator who creates a trust such as that in the instant case has two objects in view: First, the payment of the income arising from a fund to certain persons during lifetime; second, that transfer of that fund to certain individuals upon the death of the life tenants. The existence of a *corpus*, principal, or fund is an essential element of the trust and the *preservation* of this principal until the termination of the life estates is indispensable to the fulfillment of the testator's plans. Therefore, any depletion of the principal tends to frustrate the fundamental purpose of the trust and should be avoided and, where the price paid for a bond consists of more than the par value thereof, that method of accounting should be adopted which will prevent the impairment of the principal unless the testator has clearly directed to the contrary. Otherwise the life tenant, who is entitled to receive only income, will, in effect, have received a part of the principal." In the case of *Berry* v. *Stigall*, 125 Mo. App. 264 [102 S. W. 585], it was decided that where a will directed that the testator's minor children should be maintained out of the rents of the real estate until the youngest child should become of legal age and a trust was created to take full charge and control

of such real estate during such period, it was proper for the trustee to use so much of such rents as should be necessary for the making of repairs, for taxes, for legal expenses and for the reasonable compensation of the trustee, and to the same effect is the decision in the cases of *New York Life Ins. Co.* v. *Sands,* 24 Misc. Rep. 102 [53 N. Y. Supp. 320] ; *Denvir* v. *Park,* 169 Mo. App. 335 [152 S. W. 604] ; *Cogswell* v. *Weston,* 228 Mass. 219 [117 N. E. 37]. The principle underlying these applications of the rule is that it is essential, in order to carry out the ultimate purposes of the testator that the *corpus* of the trust estate should as far as possible remain intact. In 22 Cyc., page 67, it is stated that ''The usual and ordinary meaning of the word 'income' when used alone is 'net income' ''; and in the case of *Sargent Land Co.* v. *Von Baumbach,* 207 Fed. 423, 430, it was held that the ordinary meaning attached to ''income'' is that it is something produced by capital without impairing that capital and which leaves the property intact, and the same thing is held in substance in the cases of *Stanton* v. *Zercher,* 101 Wash. 383 [172 Pac. 559], and *Niland* v. *Niland,* 154 Wis. 514 [Ann. Cas. 1915B, 1127, 143 N. W. 170]. While it is thus well settled that the regular annual and ordinarily recurring expenses incident to the administration of a trust of this character are payable out of the income derived from its properties, it is an equally well-settled rule that unusual and extraordinary expenses, particularly where these go to the enhancement of the value of the capital itself, should be payable out of that capital rather than out of the income thereof. (*Estate of Gartenlaub, supra,* and cases cited.) When we look to the specific expenditures of said trustee which the trial court in this case directed to be chargeable to the *corpus* of said estate we find that they were of such an unusual and extraordinary character as to be properly so charged. When the said trustee took over the residue of said estate a portion of its assets consisted of a second mortgage upon a tract of land in Kansas then owned by one Myers, which was subject to a first mortgage upon which certain overdue interest and taxes were unpaid. The trustee entered into an arrangement with Myers by which the latter deeded the premises to said trustee subject to said prior mortgage and to said overdue charges. The trustee paid the war stamps on said Myers' deed for the reason, as stated

in the evidence, that the latter was "broke" and unable to supply the same. He also paid the cost of the recordation of said deeds, the overdue interest on the first mortgage and the delinquent taxes on the land. The evidence shows that this transaction was for the benefit of the *corpus* of the estate and that its result was probably that of an enhancement of the value of the second mortgage upon the land thus acquired, and to that extent at least an increase in the amount and value of the *corpus* of the estate itself. The incidental expenditures thus made were unusual, and for that reason, as well as for the reason that the *corpus* of the estate received the main benefit of the transaction, it should in our opinion bear the burden of these expenditures.

The order of the trial court is hereby affirmed, with directions to the trial court to require said trustee to present a trustee's account in such form as will permit a settlement thereof in conformity with the views expressed in this opinion.

Shenk, J., Waste, J., Lawlor, J., Seawell, J., Lennon, J., and Myers, C. J., concurred.

Rehearing denied.

All the Justices concurred.