In the Matter of the Estate of WILLIAM S. PHELPS, Deceased.

Surrogate's Court, Delaware County, April 29, 1937.

*Harold E. Hyzer*, for Hector S. Howard, as executor, etc.

*Edwin A. Mackey*, for Eunice Phelps Lambert, life beneficiary.

O'CONNOR, S. By the will of the deceased, after the payment of his just debts and funeral expenses, he directed all the rest, residue and remainder of his estate, real and personal, of every kind whatsoever and wheresoever situated absolutely and in fee simple, be used to create a trust fund, the interest of the trust fund to be paid semi-annually to his cousin, Eunice Phelps Lambert, and on her death he gave, devised and bequeathed to his nephew, Frederick Jester, absolutely and in fee simple, the balance of the said trust fund.

Eunice Phelps Lambert has petitioned this court to compel the executor to account, and because of his failure to follow out the directions contained in said will, as she interprets them, and because of expenditures by the executor which she claims to be excessive, she asked that the executor be removed and that a trustee be appointed to administer the estate for her benefit. She has also filed objections to the account of the executor.

The deceased died at Franklin, N. Y., on March 27, 1934. At the time of testator's death his estate consisted of less than $50 in cash; life insurance amounting to about $1,450; two real estate bonds which brought about $190 on the sale; a mortgage on nineteen building lots in Pompton Plains, N. J., upon which there was due and unpaid at the time of his death $3,800 of principal and $246 of back interest, and unpaid taxes on the property from 1932; a mortgage on property in New Jersey known as the Hawthorne house and lot, upon which there was a balance of $3,500 of principal and interest from May 8, 1932, and improvement and sewer assessment of $215.98 and 1932 and subsequent taxes unpaid.

The executor has been severely criticised by Mrs. Lambert, the life beneficiary, for the manner in which he has administered the estate ever since the death of the testator, and there has been a continual disagreement between them. She now seeks to surcharge the executor with several different items in his account.

It can readily be seen from the list of items of the estate set forth above that the administration of the estate has been very difficult. The mortgages which constituted the principal part of the estate were past due and there was a large accumulation of back taxes and interest. The property is situated in New Jersey about 200 miles from where the executor resides. In order to properly administer the estate and determine what should be done with the property upon which the mortgages were liens, it was necessary for him to make trips to the State of New Jersey for the purpose of ascertaining the exact situation in relation to each property and to either give the matters his personal supervision or else intrust it to some person in New Jersey. The former method would be very expensive and the latter would undoubtedly prove unsatisfactory and might be just as expensive as the former. He tried to use both methods and, so far as the court can ascertain, exercised his best judgment and proceeded in the manner which was for the best interest of the estate.

The expenses in connection with the property in New Jersey are large and there are some charges which were made by the attorneys and real estate agents in New Jersey which appear to be excessive. However, the executor was the victim of circumstances and, while some certain charges made by the attorneys and real estate brokers in New Jersey appear to be excessive, they are not so much so as would warrant the executor in contesting the same. He evidently exercised good judgment in paying the amounts charged, rather than to enter into any litigation in relation thereto.

The mortgage on the building lots in Pompton Plains, N. J., was in arrears as above stated and after the executor had obtained possession of the lots under foreclosure they were unproductive of income. The mortgage on the Hawthorne property was in arrears. There was a second mortgage on the property so a deed could not be accepted from the mortgagor even though, as suggested by Mrs. Lambert, the mortgagor was willing to convey the property to the executor. The only way in which he could obtain a clear title was by foreclosure.

So far as the objections to the account of the executor that the charges for services and disbursements, costs and expenses of administering the estate and of the foreclosure of the mortgages, being excessive or unwarranted, the objections are disallowed.

At the time the testator died his estate consisted entirely of personal property. Mrs. Lambert would be entitled to the payment of the income from the estate after the payment of debts and funeral expenses from the time of testator's death. (*Matter of Hopkins*, 133 Misc. 554.) All charges for the administration of the estate are a charge upon the principal and should not be deducted from the income.

As stated above, it became necessary for the executor in order to protect the estate to foreclose the mortgages, take over the properties and pay the back taxes, and the taxes as they accrued after he had obtained title to the property under foreclosure. The costs of foreclosing the mortgage and of carrying the property, including the back taxes, until a sale thereof, are chargeable to the principal of the trust and are not to be deducted from the income of the life beneficiary. (*Lawrence* v. *Littlefield*, 215 N. Y. 561; *Matter of Pitney*, 113 App. Div. 845.)

Where there is productive and unproductive real property, the income from which the life beneficiary is entitled to receive, the rule that should govern as to which charges should be against the principal and which against the income is very clearly stated in *Matter of Chapal* (161 Misc. 67; modfd., 245 App. Div. 818; order of App. Div. revd. and decree of surrogate modfd. and, as modfd., affd., 269 N. Y. 464). A separate account should be set up with respect to each piece of property so acquired to be kept until the sale of that parcel. If the income from any parcel is insufficient to pay its carrying charges the deficiency should be met from the principal of the trust and not from the income. If the income shows a surplus above the carrying charges the trustee must exercise his discretion as to whether it should be entirely distributed or retained *in toto*, or in part, to meet possible future deficiencies. In case of a surplus from a particular parcel, as to

which the deficiencies have already been met from the principal of the trust, such surplus should be used to reimburse the principal and in case of the sale of a parcel, the proceeds should be properly allotted as between principal and income.

The income from the productive property and moneys on hand should be paid to Mrs. Lambert as directed in the will. The income from the unproductive property should be computed at such a rate as could have been realized by the executors on a proper investment of funds if they were actually in existence. (*Lawrence* v. *Littlefield, supra; Edwards* v. *Edwards*, 183 Mass. 581.) Under the present conditions this income should be computed at the rate of three per cent from the date of the death of testator.

The life beneficiary insists that the income from the properties should have been paid over to her without any deductions for accrued taxes, expenses of administration, etc. She is entitled to the payment of the income without the deduction of those charges but not until the sale of the property. Unfortunately, the life beneficiary is very much in need of the income and the executor should exert every effort to pay as much of the income to her as he can as soon as possible and continue to make payments of income to her semi-annually as directed by the will.

The life beneficiary objects to the items of interest on accrued taxes on the properties upon which the testator held mortgages at the time of his death, and claims the executor's account should be surcharged therewith because the taxes are a preferred debt under section 212 of the Surrogate's Court Act, and should have been paid immediately after testator's death and before the payment of the expenses of administration. If the testator had been the owner of the real property in question, this objection would be good except as to the funeral expenses. Section 216 of the Surrogate's Court Act directs that the funeral expenses be paid out of the first moneys received by the executor. The testator was not the owner of the property, he was the owner of the mortgages upon them. In order that the executor might obtain a clear title so he could sell the real property it was necessary for him to pay up the back taxes. There was not enough available cash in the estate, even after the collection of the insurance policies, to pay the funeral expenses and costs of administering the estate and the unpaid taxes on the two properties. Before he could pay these taxes and expenses it was necessary for him to obtain an order from the court in New Jersey to place a mortgage upon the properties and use the moneys obtained from the mortgage loan to pay these taxes and expenses. This was a proper procedure and his account should not be surcharged therefor.

The cost of insurance on the buildings forming a part of the life estate should be apportioned between the life beneficiary and the remaindermen. (*Peck* v. *Sherwood,* 56 N. Y. 615.) The life beneficiary contends that the taxes against the vacant lots are not a charge against the income of the estate or life beneficiary but are a charge against the principal and remaindermen. This is true, but it would seem as if the life beneficiary is laboring under a misapprehension as to the application of the rule as laid down in *Matter of Chapal* (*supra*). The trustee has a right to use the income to pay the carrying charges until the property is sold, at which time that portion of the income which has been used for carrying charges will be deducted from the principal and paid to the life tenant. (*Matter of Jackson,* 258 N. Y. 281.) If the executor or trustee is compelled to pay the taxes, insurance and carrying charges on the property prior to a sale thereof he would have no funds with which to make the payment and as a result the property would be sold for taxes and there would be no income for the life beneficiary.

The inheritance tax is not chargeable against the income. (*Matter of Tracy,* 179 N. Y. 501.)

The life beneficiary is insistent that the present executor be discharged and another executor or trustee be appointed in his place for the purpose of administering the remainder of the estate. It is unfortunate that the executor and the life beneficiary have been unable to get along harmoniously. The reason is apparent. The estate has been in such a condition that it has been impossible for the executor to pay to the life beneficiary all the income as it accrued. The life beneficiary is in straitened circumstances and needs as much of the income as she can get and as soon as she can get it. The choice of an executor lies with the testator and not a legatee or beneficiary. The testator has exercised his right and appointed Mr. Howard executor of his will. He should not be removed by the court unless he is guilty of such misconduct as will warrant his removal. No such misconduct has been shown in this proceeding. The present executor is well acquainted with the present condition of the property and all the circumstances in connection therewith. The property is now in such a condition that it will not be necessary for the executor to make numerous trips to New Jersey in the future, nor incur large expense in the handling of the property. He should not make any further trips to New Jersey unless it is absolutely necessary and he should use every endeavor to keep the expenses of the administering of the estate from now on at a minimum.

· Under these circumstances, this court, after due deliberation, has concluded that it would not be wise to appoint another executor or trustee at this time. A decree may be prepared and submitted upon five days' notice at which time allowances will be made.