86 Cal.App.2d 638 (1948)
Estate of ISABELLA J. SCHIFFMANN, Deceased. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, as Executor, etc., Petitioner and Respondent,
v.
R. J. SCHIFFMANN, Appellant; RUDOLPH JACQUES SCHIFFMANN et al., Legatees and Respondents.
Civ. No. 16218. 
California Court of Appeals. Second Dist., Div. Three. 
July 8, 1948.
 Burr & Smith, Philip Grey Smith and James G. Dempsey for Appellant.
 Newlin, Holley, Sandmeyer & Tackabury for Respondents.
 SHINN, Acting P. J.
 Two appeals are taken by R. J. Schiffmann, a residuary legatee under the will of his mother, Isabella J. Schiffmann, deceased. One is from an order instructing the executor, the other from a decree of distribution, but the appeals raise the same questions.
 Isabella J. Schiffmann, testatrix, died on June 21, 1934, leaving an estate appraised at $498,243.25. She was survived by three children, Minnie B. MacLeod, Florence A. Hagerty and appellant, R. J. Schiffmann, and a considerable number of grandchildren and great-grandchildren. Her will, *640 in which Security-First National Bank of Los Angeles was nominated as executor and also named as trustee of the several testamentary trusts, was admitted to probate August 3, 1934. Testatrix devised the residue of her estate one-fourth each to her three children and the remaining one-fourth to the trustee for the use and benefit of Clara Haas Schiffmann, widow of a deceased son, during her lifetime, with remainder to the children of the deceased son. During the administration, the assets constituting the residue of the estate earned income in the amount of $60,192.15. In its eighth and final account and petition for distribution, the executor petitioned the court for instructions as to whether the trustee, under the provisions of the trust created for the use and benefit of Clara Haas Schiffmann was "entitled to income on one-fourth of said residue from the date of decedent's death for distribution to Clara Haas Schiffmann, as life beneficiary," and if so, whether it was entitled to "gross income or net income." In its order, dated February 17, 1947, the court instructed the executor that the trustee was entitled to the income on one-fourth of the assets constituting the residue of decedent's estate for the purpose of distributing such share of the income to Clara Haas Schiffmann as life beneficiary, together with interest at the rate of 4 per cent per annum to date of distribution, the "income to commence drawing interest from the date received by the executor," and that the income and interest to which the trustee was entitled was "gross income and interest, and all costs of administration, estate taxes, inheritance taxes and income taxes ... shall be first deducted from the other assets remaining in this estate." Clara Haas Schiffmann, the life beneficiary, died on February 1, 1947, before the estate was ordered distributed.
 In its order of March 19, 1947, settling the eighth and final account, instructing the executor and ordering distribution, the probate court, among other matters, found: That under the "NINTH" paragraph of the will, decedent did not "express any intent or direct that the income of the one-fourth of the residue of this estate devised and bequeathed to said trustee as aforesaid should not accrue or be paid to said trustee from the date of death of said decedent for distribution to Clara Haas Schiffmann as life beneficiary of said trust, but on the contrary decedent intended that said income on said one-fourth of the residue should be paid to said trustee from the date of death of said decedent and intended that upon the termination of said trust said income from said one-fourth of *641 said residue, if not then available for distribution to Clara Haas Schiffmann, should become a part of the trust estate for distribution in the same manner as the trust corpus"; that the trust had terminated by reason of the death of Clara Haas Schiffmann. The court then instructed the executor, and decreed, among other matters: (1) that since the income and interest thereon to which the trustee would have been entitled upon distribution of the estate had not been received by the trustee and were not available for distribution prior to the death of Clara Haas Schiffmann, the same became a part of the trust estate and should be distributed by the executor directly to the issue of Frederick C. Schiffmann living at the date of the demise of Clara Haas Schiffmann, pursuant to the terms of the trust; (2) that by reason of the death of the life beneficiary one-fourth of the assets remaining in the residue of the estate upon distribution, after the payment from the residue of the income and interest as provided for above and the deduction of all costs of administration, executor's commissions, attorneys' fees, income taxes and other proper items, should be distributed directly in equal shares to the remaindermen of the trust (naming them), and the remaining three-fourths of the residue should be distributed to the residuary legatees. It also ordered that the sum of $15,048.04 (being one-fourth of $60,192.15, income received by the executor from the residue of the estate from the date of the death of the decedent), together with interest in the amount of $772.22, (being interest upon said income at the rate of 4 per cent from the date received by the executor to date of distribution), be distributed in equal shares to the remaindermen entitled to the corpus, together with interest at the rate of 4 per cent per annum upon said sum of $15,048.04 from the date of the decree of distribution to the date of distribution thereof. As will be noted, the decree of distribution was not made until March 19, 1947. The delay was due to the nature of the assets and claims and taxes against the estate and to certain other pending probate proceedings.
 By the terms of her will, the testatrix made certain bequests and devises not material here. She provided for a trust in the principal amount of $10,000 each to a named great-grandchild and as many others in the same amount "as equal the number of my grandchildren and great-grandchildren ... in being at the time of my death." Each of these trusts provided, among other things: "This is a trust for maintenance, *642 and I direct that the income from the trust estate be paid to the beneficiary by my Executor beginning from the date of my demise and continuing until distribution of the trust estate to the trustee, if, in the opinion of said executor, the same can be done without sacrifice or injury to my estate, and without injury to any legatee, devisee, or other beneficiary under this Last Will and Testament." (Italics added.) The residue of her estate was bequeathed in Paragraph "NINTH" as follows:
 "One-fourth thereof to each of my following named children: R. J. Schiffmann, Minnie B. MacLeod and Florence A. Hagerty. ..."
 "One-fourth thereof, which I would have left to my son, Frederick C. Schiffmann, had he not predeceased me, to SECURITY-FIRST NATIONAL BANK OF LOS ANGELES ... in trust for the following uses and purposes in relation to the same:"
 "To receive and collect the principal and income of the trust estate, and to invest and re-invest the same in the manner the Trustee deems best for the purpose of securing the maximum of income consistent with safety whether the same is permissible by law for the investment of trust funds or not, and, in addition, after the payments and deductions hereinafter mentioned to pay and/or accumulate and/or use and/or hold, and apply and distribute the same to or for the purposes hereinafter stated and/or for the use and benefit of the beneficiaries hereinafter named, and to convey and transfer the corpus or principal of the trust estate with accumulations, if any, as hereinafter provided."
 "The entire net income received from the trust estate and available for distribution shall be distributed to and/or for the benefit of Clara Haas Schiffmann, the widow of my deceased son, Frederick C. Schiffmann, during her life time, unless she should marry, and, in event of her marriage, the payment of all income to and/or for the benefit of said Clara Haas Schiffmann shall cease."
 "The income of this trust shall be paid to said Clara Haas Schiffmann in equal amounts monthly as nearly as practicable, the amounts and times of such payments to be left in the discretion of the Trustee."
 "... If the income from this trust shall, in the opinion of the Trustee, be insufficient to provide Clara Haas Schiffmann with reasonable support, care and comfort, or shall be insufficient to provide her with reasonable care in case of illness *643 or accident or other emergency, the Trustee may pay to or apply or expend for the use and benefit of such person so much of the principal up to and including the whole thereof as the Trustee may deem advisable."
 "Each beneficiary hereunder is hereby restrained from anticipating, encumbrancing, alienating or in other manner assigning his or her interest or estate in either principal or income, and is without power so to do, nor shall such interest or estate be subject to his or her liabilities or obligations, or to judgment or other legal process, bankruptcy proceedings or claims of creditors or otherwise. All income and/or principal shall be payable and deliverable only and personally to the respective beneficiaries entitled thereto. ..." Upon the termination of the trust by reason of the death of Clara Haas Schiffmann, or upon her remarriage, the trust estate was to be distributed "to the then living issue of my deceased son, Frederick C. Schiffmann, in equal shares, per stirpes."
 [1] Appellant contends that the court erred in instructing the executor that the income received by it from one-fourth of the residue accrued as of the date of death of the testatrix. The effect given to section 160, Probate Code, in Estate of Platt, 21 Cal.2d 343 [131 P.2d 825], is determinative of this contention. This section provides: "In case of a bequest of the interest or income of a certain sum or fund, the income accrues from the testator's death," and should be read with section 163, which gives controlling effect to the testator's "express intention." It was held in Estate of Platt that where a will does not expressly fix a date from which income should be paid by the trustee, section 160 controls, it being unnecessary then to consider whether the trust is one for maintenance and support. (Estate of Hyland, 58 Cal.App.2d 556 [137 P.2d 73]. Cf. Estate of DeLano, 62 Cal.App.2d 808, 816 [145 P.2d 672]. See, also, cases collected in 70 A.L.R. 637; 105 A.L.R. 1104; 158 A.L.R. 441; 32 Cal.L.Rev. 105; 2 Scott, Trusts, 234 et seq.; Rest. Trusts, 234.)
 In applying the general rule, the court in Folsom v. Strain, 138 Neb. 497 [293 N.W. 357], gave an excellent interpretation to the expression, "unless it is otherwise provided in the will," holding that it means "some language or provision in the will that (1) expressly fixes a different date than that of the testator's death when the right to the income shall accrue; or (2) makes other specific disposition of the income accumulating up to the time the property comes into the trustee's hands; or (3) nullifies by definite expression or by *644 clear implication the presumed intention to have the right to income accrue as of the date of the testator's death."
 Appellant concedes that under the decision in the Platt estate, section 160 of the Probate Code is controlling where the will is silent as to the date of accrual of income, but argues that it is clear from an examination of the will as a whole that it was the "express intention" of the testatrix that the income was to accrue from the date of distribution to the trustee and not from the date of death. In support of his argument, appellant points to the specific provision contained in the trusts established for the grandchildren and great-grandchildren, supra, that the trusts are "for maintenance" and directs the executor to pay the income from the trust estate "from the date of my demise and continuing until distribution of the trust estate to the Trustee," and concludes therefrom that by reason of the absence of such direction to the executor in paragraph "NINTH" the testatrix intended the income to accrue from the date of distribution to the trustee, which, in the instant case, was a period in excess of 12 years. [2] Admittedly, under section 163 of the Probate Code the intention of the testatrix is the determining factor and that intention is to be gathered from a consideration of the will as a whole (Estate of Dasher, 53 Cal.App.2d 721, 724 [128 P.2d 380]).
 [3] We are not convinced from the mere absence of an express direction in paragraph "NINTH" as to when the income was to accrue, that the testatrix intended, much less directed, that Clara Haas Schiffmann should not receive the income accruing during the period of administration. The provisions of the will in the instant case, consisting of some 16 pages, are definite, explicit and comprehensive. From its terms it is manifest that the interests of the grandchildren and great-grandchildren were of special concern to the testatrix, for it is to be noted that after devising her residence, together with its furnishings, providing for the redelivery of whatever gifts her children had made to her during her lifetime, and making several other bequests of cash, her primary interest was in the education, welfare and well-being of her grandchildren and their children, 15 of whom became beneficiaries under trusts in the amount of $10,000 each. It is repeatedly emphasized in the provisions of these trusts that these beneficiaries were to "receive every advantage and the best education possible," and in furtherance thereof the trustee was instructed to expend, during the minority of these *645 beneficiaries, whatever portion of the trust estate it deemed necessary or advantageous to obtain for the beneficiaries the best "education, together with support and maintenance consistent with [their] station in life." Accordingly, the executor was instructed to pay the income commencing as of the date of the death of the testatrix. It does not by any means follow from the fact that the executor was not instructed to pay the income to Clara Haas Schiffmann during administration of the estate that she thereby intended that the income was not to accrue as of the date of her death. Under Estate of Platt, section 160 of the Probate Code is applicable irrespective of whether the trustee or executor of the will is directed to pay over the income.
 Appellant's argument that "the reasoning of the court in Clayes v. Nutter, supra [49 Cal.App. 148 (192 P. 870)], to the effect that the trustee could not begin payment until they [sic] received the fund and invested it so as to produce an income, and that the intention of the testatrix must therefore have been that the payments were not to begin until the fund from which it was to be produced was distributed to the trustee, applies with equal force to the case at bar," is without merit. The Clayes case, Estate of Mackay, 107 Cal. 303 [40 P. 558], and Estate of Brown, 143 Cal. 450 [77 P. 160], were distinguished in the Platt estate, supra, at page 349, and the Supreme Court stated that the conclusions reached by the courts in those cases were "justified by the facts concerning the expressed intention of the Testator. (Prob. Code, 163.)" The same distinctions pointed out in Estate of Platt are applicable to the will before us. [4] There is also an additional ground of distinction. The provisions of the trust created in paragraph "NINTH" clearly express that the trust was created for the specific purpose of providing "maintenance and support" for the daughter-in-law of the testatrix. Any doubt on this point is resolved by the spendthrift provisions contained therein. (Cf., Estate of DeLano, 62 Cal.App.2d 808 [145 P.2d 672].) Payments for support and maintenance are presumed to have been intended to accrue as of the date of the testatrix' death. (Estate of Marre, 18 Cal.2d 184, 189 [114 P.2d 586]; Estate of Dare, 196 Cal. 29, 38 [235 P. 725].) This presumption "that a testator intends that a beneficiary of income, for a definite period or for life, from all or a part of the assets of his estate, shall receive such income as completely, and for as full a period, from the date *646 of his death, as possible, is not a fictional imputation of intent, but a sound recognition of natural motive." (Folsom v. Strain, 138 Neb. 497 [293 N.W. 357, 359].) Section 162, Probate Code, provides that legacies for maintenance bear interest from the testator's death. In stating this rule, the court said in Estate of Marre, 18 Cal.2d 184, 189 [114 P.2d 586]: "This is true even though the legacy is in trust. (In re Mackay, 107 Cal. 303 [40 P. 558]; Estate of McGirl, 125 Cal.App. 310 [13 P.2d 746]; see In re Pearson's Estate, 251 Pa. 612 [97 A. 71].) It is true, of course, that a trust for support and maintenance, created by a residuary devise including both real and personal property, is not technically a legacy for maintenance, since a legacy is ordinarily a bequest of money or personal property. (Estate of Ross, 140 Cal. 282, 290 [73 P. 976]; Thompson, Wills, (2d ed.), p. 19, sec. 11; 24 Words & Phrases, 517.) Identical considerations are involved, however, in ascertaining the testator's intent whether the gift is a legacy for maintenance, a trust of personal property for that purpose (cf., In re Mackay, supra), or a similar trust consisting of both real and personal property. (See Estate of Dare, supra.) The nature of the property placed in trust should not require different conclusions where it appears that the testator's motives and desires were identical." Since there is no express intention found in the will that income from the trust estate should accrue other than from the date of death of testatrix, section 160 is controlling. Section 162 furnishes independent support for the order and decree in this respect for the reason that the trust in question was clearly one for maintenance of the beneficiary.
 The allowance of interest on the income in the hands of the executor is in accordance with the rule laid down in Estate of Platt, supra, and is not challenged here except insofar as it is based upon what is said to be an incorrectly calculated income figure. Appellant contends that the distribution of one-fourth of the gross income to the remaindermen was erroneous, and that if any income was payable at all, it should have been net income only. The contention is predicated upon the theory that the "residue," one-fourth of which was to comprise the trust estate, consisted of all the assets, including accrued income thereon, ultimately remaining after payment of the administration expenses. The income payable to the life beneficiary, it is argued, is derived from and is a part of this ultimate net residue, and thus must be charged with its share of the administration expenses. *647
 [5] The principal is well established that, except where a contrary intention is expressed in the will (see In re Pfenninger's Estate, 135 Minn. 192 [160 N.W. 487]), or where the controlling purpose of the testator would be defeated by the application of a contrary rule (see Industrial Trust Co. v. Harrison, 67 R.I. 131 [21 A.2d 254, 135 A.L.R. 1312]), the expenses of administration prior to the establishment of the trust are chargeable, insofar as it is adequate to meet them, to the corpus of the estate which is ultimately to form the trust and not to the income accruing thereon during the period of probate administration. (Estate of Dare, 196 Cal. 29, 40 [235 P. 725]; Estate of Lair, 38 Cal.App.2d 737, 740 [102 P.2d 436]; In re Phelps' Estate, 162 Misc. 703 [295 N.Y.S. 840, 845]; Estey v. Commerce Trust Co., 333 Mo. 977 [64 S.W.2d 608, 616]; In re Koffend's Will, 218 Minn. 206 [15 N.W.2d 590, 601]; anno., 135 A.L.R. 1322.) The ninth section of the present will, it is true, provided for payment to the life beneficiary of "the entire net income received from the trust estate and available for distribution." The amount of the income to be so applied is determined after the application to gross income of certain specified deductions, for the will provides that "From the gross income received or derived from the trust estate or from the principal thereof, if necessary, there shall be paid and discharged all taxes, assessments, costs, charges, attorney's fees and expenses incurred or expended in the care, management, administration, protection and distribution of said trust estate, including a reasonable compensation to the Trustee for its services as such hereunder." These are the only deductions provided for by the terms of the will, and it will be noted that they comprise expenses which would arise solely out of the management of the trust estate by the trustee, and do not include the expenses incurred by the executor in the administration of the probate estate prior to formation of the trust. The method prescribed for calculation of net income during the life of the trust clearly can have no bearing on the question before us, for the income presently in issue accrued prior to the time when the trust was to come into existence. Any intention which the testatrix may have had in respect to the allocation of the probate administration expenses, which might have rendered the general rule referred to above inapplicable, appears to have remained completely unexpressed, and we find nothing in the will from which to imply any such intention. *648 Furthermore, we discern no obvious or pressing necessity to allocate those expenses to income rather than to corpus, in order to carry out the testatrix' controlling purpose. There is no showing that the corpus is insufficient to pay these expenses, nor that it would be necessary to liquidate assets contained therein by way of forced sale at a substantial sacrifice in value in order to make the necessary payments. On the contrary, we think the intention of the testatrix to provide income for the support and care of her son's widow would be seriously and unnecessarily interfered with by assessing a proportionate part of the burden of the administration expenses upon that income. The fact that the income is not payable during administration, of course, affects only the time at which payment may be enforced and not the right to that income. (See Estate of Platt, supra, 21 Cal.2d 343, 347; Estate of Marre, 18 Cal.2d 184, 190 [114 P.2d 586].)
 [6] Appellant, however, argues that the will evinces an intention to treat the three children who were named as residuary legatees, and the fourth child's widow who was named the income beneficiary of the trust, on an equal basis in respect to the amount designated for each of them. This intention is said to be revealed by the words used in the will stating that the share of the residue to be placed in trust for the son's widow was that "which I would have left to my son, Frederick C. Schiffmann, had he not predeceased me." Thus, it is urged, the amount distributed to each of the four beneficiaries of the ninth section of the will should be equal, and they should bear equally the burden of the administration expenses. The decree appealed from, so it is said, fails to provide for either of these results. On their face the quoted words from the will upon which appellant relies appear to be merely explanatory of the testatrix' disposition of her residuary estate, rather than indicative of the claimed intention. If they were to be construed in the latter manner, the substantial effect of the dispositive provisions of the ninth section of the will would be in flat contradiction thereto, for, by giving to the widow only the income from a trust for life, she was clearly not treated on an equal basis with the three legatees receiving outright gifts. The income to which she was entitled might be either substantial or negligible, depending upon the rate of return and upon how long she might survive the testatrix. The son's widow thus did not receive the same share of the estate as the testatrix presumably would have left to her son, and there is therefore no basis for construing *649 the quoted words as requiring the trust income to be charged with an equal part of the administration expenses. Furthermore, the present controversy arises as between the legatees and the remaindermen to whom, due to the termination of the trust, both the income and corpus have been awarded. As between the present parties, we think the instructions to the executor and the decree of distribution plainly do allocate the burden of administration expenses equally. Those expenses were charged to the assets remaining in the estate after paying the one-fourth share of the accrued gross income to the trust remaindermen. These assets consisted of all the residuary principal of the estate plus the remaining undistributed three- fourths of the accrued income thereon. Although no allocation was expressly made in the order as to which of these two categories of assets was to be used to pay the administration expenses, we must assume that for accounting purposes at least, they were not charged to income but were to be paid from the principal assets or corpus in conformance to the controlling rule of law to which we have already referred. Thus, the assets within the residuary estate which were to become the corpus of the trust, were charged with a proportionate share of the administration expenses, equally with the respective shares of the three legatees.
 As we have seen, the decree allocated to the trust corpus one-fourth of all the assets remaining after payment of the life beneficiary's accrued trust income and the administration expenses. Thus, in effect, the decree awarded, as the corpus of the trust, one-fourth of the principal plus one-fourth of the undistributed three-fourths of the gross income. The remaindermen, therefore, received as part of the corpus an additional three-sixteenths of the accrued gross income from the residuary principal of the estate, whereas one-fourth of that gross income, which supposedly was earned by the one-fourth share of the principal constituting the corpus of the trust, had previously been distributed to them as the income beneficiary's share. It is manifest that the said three-sixteenths of the income was actually earned by the residuary legatees' shares of the residuary principal, that is, by assets never embraced by the trust at all. The property distributed to these legatees was correspondingly diminished in amount.
 It is at least questionable whether this was a correct basis of division, but appellant has not brought the question here for decision. He has appealed only from those provisions of *650 the order and the decree which direct distribution to the beneficiaries of the trust of one-fourth of the income accruing from the date of death with interest thereon, and which failed to charge against the same any of the expenses of administration. His notices of appeal contain this strict limitation and under the broadest possible interpretation cannot be construed as bringing in question the correctness of the distribution to the beneficiaries of the additional three- sixteenths of the income derived from the residue of the estate during the course of administration. In fact, appellant does not raise the point in his briefs other than by general statements that too great a share was distributed to respondents. Our affirmance of the order and decree does not imply that we deem them to be correct in this particular.
 The order and decree are affirmed.
 Wood, J., and McComb, J. assigned, concurred.