Industrial Trust Company, Trustee
vs.
Russell G. Colt, et als.

Eq. No. 12159.

August 1, 1934.

BAKER, P. J. This is a bill in equity brought by the Industrial Trust Company as trustee under the will of Samuel P. Colt, late of Bristol, for instructions. The respondents are all the parties in interest under the residuary trust created in said will and have filed answers. Guardians ad litem have been appointed for minor respondents and for contingent and unascertained interests.

It appears from the record herein and from the evidence presented that the complainant was both executor and trustee under said will. Samuel P. Colt died August 13, 1921, and his will was admitted to probate by the Probate Court of Bristol September 6, 1921. As executor the complainant filed four accounts. The first three accounts covered the period from August 13, 1921, to November 3, 1927, and the final account covered the period from said last mentioned date to September 7, 1929. All these accounts were allowed by the Probate Court of Bristol, the final account on October 7, 1929. No appeal was taken by anyone interested from the allowance of any of these accounts.

The residuary estate of Mr. Colt was disposed of by the 27th and 28th clauses of his will and certain trusts were therein created. There were two groups of life beneficiaries, one group following the other, before a final distribution of the estate was provided for. All these matters are set out very fully and in detail in the bill in equity filed by the complainant and in the other pleadings in the case. It does not seem necessary or advisable to refer to them more fully at this time. The trusts created under said will are now in effect.

The complainant as executor proceeded to administer the estate of Mr. Colt and paid all debts, taxes, expenses of administration, pecuniary legacies, and certain interest. It then turned over to itself as trustee under the will the balance remaining in its hands as executor, which balance included considerable income which had accrued during the administration of the estate.

In administering this estate the executor, in good faith, under the advice of counsel and as a matter of precaution, considering the nature and size of the estate involved, adopted what is known as the English rule. Under this rule all estate liabilities were charged by the executor partly to principal and partly to income, according to a certain proportion. In substance, under this rule, each estate liability is paid with that amount of capital which, together with the income thereon from the date of death to the time of payment, equals in amount the liability in question. All this appeared quite clearly in the accounts of the executor as allowed by the Bristol Probate Court. The balance of principal and income remaining after such charges was turned over by the complainant as executor to itself as trustee and the latter accepted in general this determination of principal and income and has made, as yet, no change or re-adjustment.

At the time the estate in question was being administered there was no decision in this jurisdiction directly in point relating to the proper method of paying estate liabilities where a residuary trust was created by a will. Recently, however, this question has been before the Supreme Court in the

case of *City Farmer's Trust Co. et al, Trustees,* vs. *Taylor et als.,* 53 R. I. 126. In that case the Court unequivocally decided that in this state what is known as the Massachusetts rule is the law. This rule requires that all estate - liabilities of every kind should be paid from principal and none from the income accruing during the administration of the estate; all of which should go to the life beneficiaries of the residuary trust. All parties in interest in the case at bar are agreed that the Taylor case, supra, is in point herein and settles the law definitely in this state on the point therein raised.

Under these circumstances the complainant as trustee is now asking instructions from the Court in relation to the residuary estate it is administering under the will of Mr. Colt.

Three questions are presented by the complainant. First: Should the amounts charged, in the four executor's accounts in the apportionment of the estate liabilities and the interest paid on the estate liabilities between principal and income, to the income from the one-half of the testator's residuary estate subject to the trusts of the 27th clause of said will and from the one-quarter of his residuary estate subject to the continuing trusts of the 28th clause of said will, now be distributed as net income from said one-half and one-quarter? Second: If the answer to this question is in the affirmative, should the counsel fees and expenses of the complainant in this proceeding be paid from such income? Third: If the answer to the first question is in the affirmative, should adjustment be made as may be required by reason of the fact that the respondent Theodora C. Barrows individually and the respondents Mary L. Gross and Elizabeth L. Anthony have received, since the decease of their father, LeBaron Bradford Colt, the entire net income from the amount

which would be payable in such distribution to the respondent Theodora C. Barrows as administratrix d. b. n. c. t. a. of the estate of said LeBaron Bradford Colt?

It appears in the case that LeBaron B. Colt, a brother of the testator and a life beneficiary under the trust, died August 18, 1924, leaving a will. Certain of the respondents herein are interested parties by reason of claiming under the estate of said LeBaron B. Colt.

All of the life beneficiaries of the residuary trust herein desire the first above question to be answered in the affirmative and wish the complainant, as trustee, to readjust its account according to said Massachusetts rule and to pay over to them, by way of income from the estate of Samuel P. Colt, such amounts of money as will equal the sums which the executor in its accounts apparently allocated from income to the payment of the estate liabilities. There is no dispute in the case as to what these amounts are or to whom they would be payable. In all they amount to something over $70,000. The testimony of Mr. Metcalfe is not disputed and the figures are clearly available from the various accounts.

The guardian ad litem of certain minor respondents and of certain contingent and unascertained interests, however, takes the position that no readjustment should be made and that, for the benefit of the remainder men and future interests, such amounts as are herein involved should remain in the principal of the trust estate and should not be paid out to the life beneficiaries as retained or accumulated income.

The guardian ad litem makes his claim on two chief grounds. In general, the first is that the matter before the Court is now res adjudicata because the question of what was income and what was principal was set-

tled by the allowance of the executor's accounts in the Probate Court in Bristol, from which allowance no appeal was taken. The second reason is that the life beneficiaries by their own conduct have prevented themselves from now claiming such income by signing certain receipts introduced in evidence herein.

The life beneficiaries contest both of these contentions vigorously.

The principles of the law governing the doctrine of res adjudicata are in general accepted by all the parties herein. A definition appears in Vol. 15 R. C. L., pages 950, 951. Under our own statutes it would seem that a decree of a probate Court involving the settlement of the account of an executor or administrator would under certain conditions be res adjudicata.

Gen. Laws of R. I., 1923, Chap. 370, Sec. 10.

In considering the matter of res adjudicata, however, it appears plain that for a matter to be res adjudicata and conclusively settled the question in point must be necessarily and directly involved and adjudicated. Mere collateral matters, even though incidentally passed upon and only collaterally in issue, are not conclusively adjudicated.

Vol. 24 C. J. 1029;

Vol. 3, Woerner's Amer. Law of Adm'n, 3rd Sec. 506;

Patterson vs. Booth, 143 Mo. 462;

Pitts et als. vs. Howard et als. 208 Ala. 380.

It is well settled in this state that a Court of probate has special and limited jurisdiction and can only exercise it in the manner and to the extent conferred by statute.

Thompson vs. Clarke, 46 R. I. 307.

It is equally clear that a probate Court has no power or jurisdiction to construe wills or to pass directly on the equitable rights of life beneficiaries or remainder men under a trust.

The statutes in this state set out fully what should be included in the account of an executor.

Gen. Laws of R. I. 1923, Ch. 370, Sec. 2.

It is not necessary to refer in detail to that section at this time. However, it appears clearly therein in what manner the executor should charge himself and with what he should credit himself.

It is clear from an examination of the authorities that originally the probate Court was not permitted, in considering an executor's account, to pass upon the matter of legacies.

See

Arnold vs. Smith, 14 R. I. 217;

Williams vs. Herrick, 18 R. I. 120.

Later it is obvious that the legislature felt that the jurisdiction and scope of the probate Court in this connection should be enlarged and an act was passed which is now General Laws of Rhode Island, 1923, Chap. 358, Sec. 4. This act reads as follows: "Probate Courts may determine all questions as to payments of legacies by executors and administrators with the will annexed, and may allow such payments in the accounts of executors and administrators."

The guardian ad litem herein contends very earnestly that under the provisions of this section of the General Laws the probate Court is given absolute and broad powers to determine definitely and finally what is income and what is principal in an estate when an executor's account is being passed upon.

The Court has given this matter careful consideration but does not find itself able to give the language in question the very broad powers for which the guardian ad litem is contending. It seems to the Court that the act was undoubtedly passed to overrule the decisions in the earlier cases and to permit the probate Court to consider the matter of leg-

acies in an executor's or administrator's account. The Court questions whether anything further than this was intended. It is true that the word "all" is used, but it is used in connection with the phrase "all questions as to payments of legacies". Legacies obviously are paid out of principal and to that extent undoubtedly a probate Court might have to determine what was principal of an estate, and in this case, of course, the final account provided for the turning over of money to the residuary legatee under the will of Mr. Colt, which legatee in this instance was also the trustee.

In the case at bar it seems to the Court that the real question involved grew out of the method of paying the estate liabilities rather than out of any question relating to the payment of legacies. It does not appear to the Court that the statute in question was ever intended to give the probate Court final jurisdiction in deciding from what moneys an executor should pay the estate liabilities.

The guardian ad litem argues that it would be of advantage to have the probate Court, in passing upon an executor's account, determine definitely once and for all what was principal and what was income in an estate.

The Court does not believe that under our probate practice in this state a probate Court has this jurisdiction. If a trustee receives funds from an executor and has any doubt as to what is income and what is principal, he can readily ascertain from the Court on a bill for instructions. In the ordinary case, if the executor's accounts are in proper order when allowed, it will not be difficult for a trustee to determine what is income and what is principal. It seems quite clear that unless the will provides otherwise, the trustee pays the income to the life tenants and not the executor. The Court is of the opinion that the ordinary executor's account is merely a debit and credit account. The issue to be determined is whether the executor has properly accounted for all the funds which have come into his hands and whether he has made the proper payments in the proper amounts to the proper persons. If he has, then all the balance remaining, whether it be principal or income, has to be paid over by the executor to the proper party, in this case the trustee. In the judgment of the Court, the question of what is income and what is principal is not directly the concern of the probate Court and when the money is paid over by the executor to the trustee, it then becomes the duty of the trustee to determine how much of what he is holding is principal and how much may possibly be income.

The guardian ad litem has called to the Court's attention the decision in Bailey, Pet'r, 13 R. I. 543. In that case the Court, following an early Massachusetts decision, apparently held that it is the duty of the executor to specify in his account how much was originally capital (probably inventory.) and the income received during administration. The life beneficiaries do not question this proposition seriously. Obviously both of these items should appear in a proper account of an executor. It does not seem to the Court, however, that the case in question is authority for the proposition that the probate Court passes definitely and finally on the question as to what portion of the funds transferred by an executor to a trustee is actually income and what part is actually principal. It seems to the Court that that is a duty which the trustee must perform and if there is any doubt about it, then the equitable rights of the life beneficiaries and remainder men should be passed upon by the Supreme Court or the

Superior Court and not by the probate Court.

In the case at bar the Court does not feel that the Probate Court in Bristol actually determined what was principal and what was income. It merely satisfied itself that the executor's accounts, as far as credits and debits were concerned, were accurate and then ordered all the balance turned over to the trustee. For the sake of full information and clearness, the executor, in good faith, set out in the accounts that it was administering the estate according to the English rule, so-called. This portion of the accounts, in the judgment of the Court, was largely extraneous. As a practical proposition, it was only a matter of bookkeeping, because obviously the probate Court was not interested in determining from exactly what moneys the estate liabilities were paid as long as the proper amounts were paid by the executor to the proper persons.

Assuming, however, that it could be held that the probate Court did actually decide, in passing upon the accounts of the executor, what was principal and what was income, then the Court is of the opinion that this matter was not necessarily or directly in issue before the probate Court. The Court feels that under our system of probate law the probate Court had no jurisdiction to determine whether the funds in question constituted principal or income.

The life beneficiaries herein have called to the attention of the Court certain decisions outside of this jurisdiction.

Bancroft vs. Security Co., 74 Ct. 218;

Estate of Dare, 196 Cal. 29.

In the judgment of the Court these cases, while helpful, are not on the facts on all fours with the case at bar. In the Bancroft case, supra, everything was done properly as it should have been done by the executor. A certain amount was turned over to the trustee, part being apparently income and part principal. No attempt had been made by the executor to pay any of the estate liabilities out of income. The trustee made an attempt to hold the entire amount, both principal and income, as principal of the trust estate, and the Court decided that the life beneficiary was entitled to the income. In the opinion the Court cites the case of Lawrence vs. Security Co., 56 Ct. 423, and distinguishes it. The guardian ad litem in the case now before the Court, contends that the Lawrence case, supra, supports his position.

In the judgment of the Court that case is distinguishable from the case at bar and is not any authority for the claim of the guardian ad litem herein. In the Lawrence case, supra, it quite clearly appears that, according to the terms of the will, it was the duty of the executors to pay the income to the life tenant during the settlement of the estate. The executors did not do this but turned the money over to the trustee as part of the principal. The account was allowed by the probate Court in that form and the life tenant, with full knowledge of all the facts, stood by and did nothing. It was then held that the life tenant was concluded by the action of the probate Court. That situation is very different from the case at bar. There was no duty here on the part of the executor to pay any income to the life tenants. The duty was merely to turn over all the balance to the trustee, which the executor did.

In the case of Estate of Dare, supra, there was no attempt on the part of the executor to pay estate liabilities with income. Apparently in that case a lump sum, made up both of principal and income, was turned over by the executor to the trustee, who

was the same person, as in the case now before the Court. The Court held that the life tenant was entitled to so much of the fund as was income. The Court cites the Bancroft case, supra, as authority. There is in the language of the Court dicta which goes somewhat further than the facts of the case required and which in general supports the position of the life tenants in the case at bar in their contention that the probate Court does not pass upon what is income and what is principal in such a situation as we have herein. The Court says: "This being so, no issue was presented or presentable as to what portion of the income derived from the property of said estate the primary beneficiary of said trust would be entitled to receive from the trustee thereof * * * ".

See also

> Minot vs. Amory et al., 2 Cushing (Mass.) 377.

The Court has come to the conclusion, therefore, for the reasons above indicated, that the question of what is principal and what is income in the matter now before the Court is not res adjudicata by the decree of the Bristol Probate Court in allowing the executor's accounts.

The next point to be considered relates to the effect of the receipts given by the life beneficiaries. Several of these have been put in evidence.

The guardian ad litem contends that these receipts should be construed as in full for all income and that the life beneficiaries should now be precluded from claiming any additional sum as income. The latter, however, contend that they are merely acknowledgments for certain sums received.

It seems to the Court, on the whole, that the language of the receipts themselves tends to support the life beneficiaries' contention in this connection. In the first portion of the receipt it is stated that it is for a share in the following items of income and at the end of the receipt, where the signature appears, it says, "in full settlement of the account stated above".

In considering this language it should be borne in mind that most of the persons, if not all, who signed the receipts, were laymen, and whether they had legal advice in connection with the signing does not appear. The accounts in question were long and somewhat complicated and if any doubt exists, the Court feels it should be exercised for the benefit of those signing the receipts.

The guardian ad litem contends that it was the intention of the trustee and of the life tenants that these receipts should be in full for all income to date. He further claims that the life tenants signed the receipts with full knowledge that the executor was using the so-called English rule and was charging certain payments of estate liabilities in part against income

In the judgment of the Court all the parties were acting in good faith. The evidence of Mr. Metcalfe shows clearly that the trustee was holding out a certain reserve fund for contingent liabilities and this appears in some of the receipts. In the receipts of certain life beneficiaries the words "full settlement" were struck out and the word "payment" was inserted. This was done after correspondence between the trustee and an attorney and would seem to show that the trustee was not insisting upon the use of the words "full settlement".

Taking all the evidence in the case and the whole situation into consideration, the Court is of the opinion that it was merely the intention of the parties that these receipts operate as acknowledgments of the amounts specified therein and that they should be so construed.

Assuming, however, that the receipts in question can properly be considered as receipts in full, it is quite clear that a receipt in full is not a

release. Further, the Court is of the opinion that there is no evidence showing an accord and satisfaction in this case. The difference between a receipt and a release is well set out in Vol. 53, C. J. 1195. No claim has been made that these documents constitute releases.

In regard to the matter of accord and satisfaction, the law is carefully set out in the case of *Clark* vs. *Summerfield Co.*, 40 R. I. 254. According to that case, for a valid accord and satisfaction there must be a bona fide dispute existing between the parties. Nothing in the record or the evidence presented here, in the judgment of the Court, shows any bona fide dispute existing between the parties involved. The mere fact that the executor had attempted to administer the estate by the use of the so-called English rule and that this was known to the trustee and the beneficiaries does not in and of itself, in the opinion of the Court, constitute a bona fide dispute between the parties. The executor and the trustee were acting in entire good faith, and under the advice of counsel were exercising their best judgment as to what should be done in handling an estate of this type.

From the view which the Court has taken of the effect of the receipts, it does not seem necessary at this time to discuss at length the matter of mutual mistake of law and the question of the effect of receipts as between cestui que trust and trustee, both of which points have been urged by the life tenants as further reasons why they are not bound by the receipts.

The Court finds, therefore, that the receipts are merely acknowledgments of payments of the amounts contained therein and that they do not preclude the life tenants from making a claim against the trustee to the items of income involved herein.

The first question which the trustee has asked the Court in its bill of complaint is therefore answered in the affirmative.

In view of the fact that the trustee has brought this bill on behalf of all the interested parties, it seems reasonable to the Court that its fees and expenses be paid out of the income which is the subject matter of this case, and the second question of the trustee is also answered in the affirmative.

It also seems to the Court clear that certain adjustments may be necessary by reason of the death of LeBaron B. Colt and the fact that his daughters have received, since his decease, the entire net income from the amount which would be payable in such distribution to the respondents Theodora C. Barrows as administratrix d. b. n. c. t. a., and the third question is also answered in the affirmative.

In the answer of the respondent Theodora V. Barrows as administratrix d. b. n. c. t. a. of the estate of LeBaron Bradford Colt, the question is asked the Court whether payments of income which became payable to the said LeBaron Bradford Colt, or his executor or administrator, should be paid to her as such administratrix or directly to the persons entitled thereto as distributees under the will of said LeBaron Bradford Colt.

In answering this question, it seems to the Court that in order to bring about an orderly handling of the funds involved, such income should be paid to the said Theodora C. Barrows, administratrix d. b. n. c. t. a. of the estate of LeBaron Bradford Colt, rather than to the distributees directly.

One more matter remains for consideration.

After hearing on bill and answers, the Bancamerica-Blair Corporation filed a petition to be allowed to intervene in the proceeding now before the Court. Such petition shows that it began an action at law by writ of attachment in this Court against one

LeBaron Carleton Colt, one of the respondents herein, and attached the personal estate of the defendant in the hands or possession of the Industrial Trust Company as executor and trustee under the will of Samuel P. Colt. This action is now pending in this Court. The Industrial Trust Company filed a garnishee's affidavit setting out certain facts in relation to the present proceeding. The Bancamerica-Blair Corporation, in addition to asking for leave to intervene. also asks for certain relief by way of injunction against the Industrial Trust Company and against Theodora C. Barrows individually and as administratrix d. b. n. c. t. a. of the estate of LeBaron B. Colt.

The petition is resisted by certain of the respondents herein.

It is clear that the petition is filed under the provisions of General Laws of R. I., 1923, Chap. 339, Sec 12. According to that section, the Court may permit a party interested in the subject matter of any bill or proceeding in equity to become a party upon such terms and conditions as the Court may prescribe. The Petitioner here contends that it is an interested party. Of course it is not in any way a necessary party. It is clear from the petition that the petitioner claims to be a creditor of the respondent LeBaron C. Colt, who may have certain rights in the income involved in the suit now before the Court.

The case at bar is a bill brought by a trustee for instructions. The petitioner in this matter undoubtedly has a remote interest as far as this litigation is concerned but does not seem to the Court to have any very direct or close interest. It would appear that it has not yet perfected its claim against LeBaron C. Colt.

The Court is of the opinion that the petitioning creditor should take the ordinary and usual proceeding against the debtor to protect its rights.

To permit an intervention at this time by the creditor would merely tend to complicate and confuse the present proceeding before the Court.

The entry of a decree in the case at bar will not directly affect the creditor's rights against defendant one way or the other.

Vol. 21, C. J., p. 342.

The petition of Bancamerica-Blair Corporation to be allowed to intervene is denied.

For complainant: Edwards & Angell.

For respóndents: George Hurley, Charles C. Remington, McGovern & Slattery, Fred B. Perkins, Hinckley, Allen, Tillinghast & Wheeler, Joseph W. Grimes, Tillinghast & Collins, Edward A. Stockwell, Robert P. Beagan.