Industrial Trust Company and James T. Kaull, Executors and Trustees *vs.* Irene Dorothy Harrison *et al.*

JULY 10, 1941.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

132

BAKER, J.   This is a bill in equity brought in the superior court for the construction of a will and instructions to trustees. When the cause was ready for hearing for final decree it was certified to this court for decision in accordance with general laws 1938, chapter 545, § 7.

All necessary parties are before the court and have filed answers. A guardian *ad litem* was appointed by the superior court for minor respondents, and also a representative for persons not in being and for unascertained and contingent interests. Testimony was taken in the superior court. From the evidence it appeared that Herbert P. Harrison, late of Newport, deceased, died on April 4, 1938, leaving surviving him his widow, Irene Dorothy Harrison, and their two

minor children, one eleven years of age and the other about five years of age at this time. His will, portions of which are before us for construction, was dated December 20, 1934. A codicil thereto, which is not involved in these proceedings, was executed by the testator on November 23, 1937. An error in numbering the paragraphs in the will is obviously merely typographical, and no question has been raised concerning it. This will and codicil were duly admitted to probate in Newport on May 16, 1938. Letters testamentary were thereupon issued to the complainants as executors of said will and they are now acting in that capacity. In that instrument the complainants were also named as trustees of certain trusts. On January 2, 1940 the testator's widow was duly appointed by the probate court of Newport as guardian of the persons and estates of the above-mentioned two minor children.

By the fifth paragraph of his will the testator devised and bequeathed all the residue of his estate to the complainants in trust, giving them broad powers in connection with the management of the trust estate. The fifth paragraph then continued as follows:

"(e) (1) I direct my Trustees to pay over to my wife, Irene Dorothy Harrison, immediately after the probate of my will and the settlement of my estate, but in any event not later than one year after my decease, for and during the period of the next succeeding fifteen years, or until she remarries, the net income accruing from that portion of this trust estate which shall provide for my said wife an annual income of Twenty-Seven Hundred Dollars, provided that the policies referred to in clause Third hereof are in full force and effect, otherwise an annual income of Thirty-Six Hundred Dollars, from this trust estate payable in monthly or quarter-annual installments for and during the said period of fifteen years.

(e) (2) Thereafter during the remainder of her natural life or until she remarries, I direct my Trustees, in like manner, to pay to my said wife the net income accruing from that portion of this trust estate which shall

provide for my said wife an annual income of Thirty-Six Hundred Dollars payable monthly or quarter-annually as aforesaid.

(e) (3) In the event that my said wife shall remarry then I direct my said Trustees, in like manner, to pay to my said wife, Irene Dorothy Harrison, only the net income accruing from that portion of this trust estate which shall provide for my said wife an annual income of Twelve Hundred Dollars, payable monthly or quarter-annually as aforesaid during the remainder of her natural life or until my said wife shall become unmarried or a widow. In the event that she does become unmarried or a widow before any one of my children shall have attained his twenty-second birthday, then the provisions of this sub-section (e) (3) shall no longer be operative and in full force and effect, but shall become void and of no effect. I direct my said Trustees to pay to my said wife in the event of her becoming unmarried or a widow on or before the twenty-second birthday of the first of our children to have attained this age, the income and/or principal as provided in (e) (1) or (e) (2) hereof in the same manner as if my said wife had never remarried.

(e) (4) I further empower my Trustees to transfer and to pay over to my said wife such portion of the trust estate necessary to produce her annual income as provided in section (e) hereof, as, within their discretion, may be required from time to time to provide for any emergency of health (either of my said wife or of our children) or the expense of the education, including collegiate education, of our said children.

(f) If at any time during the existence of this trust, there shall be any income from any portion of the principal of my trust estate not required for the benefit of my said wife in accordance with Section (e) of this Will, then I direct my said Trustees to apply such income for the benefit of the children of our marriage share and share alike, or to their lawful issue by representation. Upon the arrival of any child of our marriage at his or her twenty-second birthday I direct my said Trustees to divide the portion of my trust estate which is not required to provide for my said wife in accordance with Section (e) of this Will into equal shares among our

children or their lawful issue by representation and thereafter to hold, transfer or pay over to each child upon his or her arrival at the age of twenty-two years an amount equal to one-third of his or her share thus created; to transfer and pay over to each child upon his or her arrival at the age of twenty-eight years, an amount equal to one-half of his or her remaining share, and to pay the balance of such share to him or her upon arrival at the age of thirty-two years unless, in the sole discretion of my said Trustees, but not before one of my said children shall have attained the age of twenty-two years, any child shall require an earlier distribution because of illness or unforeseen misfortune, or shall have exhibited ability to personally manage his or her business affairs to advantage or because of the marriage of any daughter, then my said Trustees may (if in their sound and uncontrolled discretion they deem it wise so to do) transfer and pay over all or any part of the share of such child to him or her before attaining any of the specified ages, provided, nevertheless, however, that one of our said children has attained his or her twenty-second birthday. In the event of the decease or remarriage of my said wife after any of my children shall have attained the age of twenty-two years, then I direct my said Trustees to distribute that portion of the corpus of this trust estate which had been required to provide for my said wife her income as set out in Section (e) equally among my children or their issue by representation, share and share alike in the same manner as provided in this Section (f), or forthwith upon attaining the age of thirty-two."

Because of certain demands formally made upon the complainants by the testator's widow in connection with his estate and with said trusts, and because of certain doubts which said complainants had concerning the proper construction to be placed upon portions of the will now before us, we are asked by the bill of complaint to answer twelve questions to which we shall refer more fully hereinafter.

In considering these questions, it is necessary for us to set out certain facts appearing in evidence. The testator's estate was appraised at $80,865.07, of which $14,000 was realty

and $60,000 was a 40% interest held by him in a partnership of two members, of which he was one, located in Newport and known as The Sanitube Company, which manufactured and marketed a venereal prophylactic from a so-called secret formula. The other partner held the remaining interest of 60%. In accordance with the provisions of the partnership agreement, which provided for incorporation of the business upon the death of either partner, such business was incorporated in this state on September 12, 1938 under the same name, and all the assets of the partnership were transferred to the new corporation, which is now conducting the business in question.

The complainants, as executors of the testator's will, in exchange for his partnership interest, received 200 shares or 40% of the capital stock of said new corporation. According to a provision of its bylaws, the salaries of the officers of the corporation were fixed so as not to exceed certain reasonable amounts. These amounts could be increased only if the net income of the corporation for a calendar year exceeded $31,-500, in which case the board of directors could then declare a dividend authorizing the payment of salary bonuses within certain limits. This portion of the bylaws could be amended only by an affirmative vote of two-thirds of the stock issued, outstanding, and entitled to vote.

All of the known debts of the estate have been paid. However, certain charges, including appraisers', executors' and attorneys' fees, which amounted altogether to approximately $10,000, have not been paid, and are now due. The realty above referred to was sold and, after the payment of expenses incident to that sale, miscellaneous administrative charges, the testator's debts, and the distribution of specific legacies, there remained in the *corpus* of the estate, at the time of the hearing in the superior court, the stock of The Sanitube Company, appraised at $60,000, and other assets amounting to slightly over $800. At that same time the executors, after certain payments to the testator's widow, had

in their hands approximately $10,000, received as dividends from The Sanitube Company stock.

In construing any will it is our duty to ascertain, if possible, from a consideration of the entire instrument the intent of the testator as to the disposition of his property, and to give effect to that intent, if lawful, in so far as may reasonably be possible. *Bliven* v. *Borden,* 56 R. I. 283; *Meegan* v. *Brennan,* 63 R. I. 298, 7 A. 2d. 663. In the instant cause, in our judgment, the general intent of the testator clearly appears from an examination of his will. First, he wished his wife to have, over a period of years, a fixed annual income, varying under different circumstances and, subject to such payments to her, he then made certain provisions in his will which would enure to the benefit of his two children, until they should reach certain ages as set forth in the will. To bring these objects about, and to meet emergencies and certain expenses, he provided that the *corpus* of the estate which he had placed in trust could, if necessary, be used. He also made provision, under certain conditions, for the possible issue of his said children. In other words, he was seeking to provide first for the future needs of his wife, then of their two children, and finally, of possible grandchildren.

However, in making these dispositions there is some incidental confusion in portions of the will because of the failure of the draughtsman to distinguish precisely between the respective duties of executors and those of trustees. Since the executors have not as yet turned over to themselves as trustees the assets of the estate, a construction of the will for the benefit of the executors is to some extent necessary in order to answer the questions which have been propounded on behalf of the trustees for their instruction and in connection with the construction of parts of said will.

By the first question we are asked whether the executors may, under the will, properly pay executors' and attorneys' fees, now owed, from the income which has been collected since the testator's death and which is now held by them, or may later be so held, for the benefit of the said two minor

children. Ordinarily, such fees are, in the absence of a contrary intent on the testator's part, payable out of the principal of the estate being administered, if sufficient, and not out of the income therefrom. See G. L. 1938, chap. 579, § 1. *Evans* v. *Trustees of University of Pennsylvania,* 60 R. I. 171. The above question has undoubtedly arisen because of the nature of the assets of this estate. As indicated, the stock of The Sanitube Company comprises practically the entire estate. This stock on its appraised value of $60,000, according to the evidence, yields upwards of 16% at the present time. The business of the company in the past, when conducted as a partnership, was very lucrative and, unless unforeseen and unexpected conditions arise, should continue in the future to yield a very substantial return.

However, the interest now held by the testator's estate in the new corporation is only a minority one of 40%. It appears from the evidence that the complainants for some time have diligently attempted to sell the 200 shares of stock representing that interest, but have been unable to do so at a reasonable price, taking into consideration the yield from said stock. In fact, apparently only one prospective purchaser has even been interested in the company. There evidently is no market for the sale of a small number of shares. The owner of the 60% interest has apparently expressed a willingness to have all the stock of the company sold if he can receive $180,000 for his share. No third person, however, has been found who is willing to pay a sufficient sum for the entire stock to justify the complainants in selling their 40% interest. The only tentative offer received on the above basis would net the complainants only about $45,000, which clearly would be insufficient, under present conditions, to permit the carrying out of the scheme of the testator's will, even to the extent of making the necessary payments to the widow. The owner of the 60% interest is willing to purchase the complainants' 40% interest, but only by giving his personal note therefor and paying it off gradually from the profits of the business.

Under these circumstances, all the parties to this cause are in agreement that at the present time, in view of the fact that the complainants are unable to obtain for the shares of stock which they are holding an amount reasonably commensurate with their value, the complainants should not be compelled to sell them now for whatever sum they might bring, regardless of all other facts and conditions.

In this connection the widow contends that, granting that the fees referred to in the first question are ordinarily paid out of the *corpus* of an estate, in the instant cause they should be paid out of the accumulated income above referred to. She argues that the unquestioned, dominant intent of the testator was to provide for her and her children; that such intent can not be carried out under the peculiar facts existing in this estate and that the entire plan of the testator will fail if the stock of The Sanitube Company is sold at a sacrifice without regard to its present actual value. In support of her position the widow has called our attention to the many similarities between this case and that of *Boardman, Petitioner,* 16 R. I. 131, in which the court found, in substance, that it was the clear intent of the testator in the will then before it that his debts should be paid out of dividends received from shares of a very productive stock, rather than sell such shares. The guardian *ad litem* for the two minor children, in general, makes the same contentions as does the widow.

The representative of persons not in being or not ascertainable maintains, first, that the dividends on the stock of The Sanitube Company should be apportioned between principal and income, and that the amount which thus becomes principal should be used to pay the fees in question. He argues that such apportionment should be made either under general principles of law or under authority expressly given the trustees under the terms of the will. Secondly, he contends that if such apportionment can not properly be made, then the fees should be paid out of the accumulated income, rather than from the *corpus* of the estate derived

from a forced sale of The Sanitube Company's stock. A third suggestion made by him in regard to the method of paying the fees in question, in our view of the situation, need not be further considered.

The first question before us relates to the duties and obligations of the executors of the will under consideration, and not to the duties of the trustees. The rule as to the apportionment of income, under certain circumstances, partly to principal and partly to income, is ordinarily applied in the administration of trusts. Since the executors have not as yet turned over the assets of the estate to themselves and no trust estate has as yet been set up, it is difficult to see how the argument concerning the apportionment of income can properly be made in view of the form and scope of the first question.

If we understand said argument as made by the representative of contingent and unascertained interests, we are asked to apply to the executors and to the assets in their hands, as the cause now stands, the same principles of apportionment which he contends are ordinarily applied to a trust estate which had actually been set up, and to assets which were in the hands of and were being administered by trustees. No authority has been submitted to us, and we have found none, which supports this contention. However, assuming that the rule of apportionment might, under some circumstances, be applicable to the assets of an estate in the hands of executors equally as if they were trustees administering a trust estate already set up, we do not believe that such application, in view of all the facts, circumstances, and necessities appearing herein, would best effectuate the intent of the testator as we have found it from the will.

The rule of apportionment has frequently been applied in the administration of trusts to estates in which the assets are of an unproductive or a wasting nature. See *Rhode Island Hospital Trust Co.* v. *Tucker,* 52 R. I. 277 and *Industrial Trust Co.* v. *Parks,* 57 R. I. 363. The rule

has also been applied, under proper circumstances, in certain cases in which the assets in the trust estate were considered to be of a hazardous character and not ordinarily held by trustees, but were, nevertheless, yielding an income substantially greater than the usual rate of return on trust investments. Property of this last type is not necessarily wasting property, and the sale thereof may be reasonably delayed until an adequate price can be obtained. 2 Scott on Trusts, 1379.

The doctrine of apportionment is ordinarily applied after the sale of the asset which, for some reason, is of such a nature that it should not be retained in the trust estate. Part of the sum received at such a sale is then apportioned to principal and part to income, according to a well-established rule which was adopted and set out by this court in *Rhode Island Hospital Trust Co.* v. *Tucker, supra.* See also 2 Scott on Trusts, 1354.

Occasionally, a temporary apportionment is made prior to sale by paying some of such income to the life beneficiary of the trust and making an adjustment after such sale, when it can be ascertained whether or not the beneficiary has received too little or too much according to the application of the rule above mentioned. Also courts at times have, under the above circumstances, made an apportionment by ascertaining the value of the property in question when it becomes part of the trust estate; and they have provided for payment to the life beneficiary of interest on such amount at the usual rate of return on trust investments. This last-mentioned method has been criticized as being based on a guess and not fair either to the life beneficiary or to the remainderman. 2 Scott on Trusts, 1379-1381.

After a consideration of the above principles of law relating to the doctrine of apportionment in general, we are of the opinion that said doctrine should not be adopted by us as the correct answer to the first question submitted. It clearly was the intent of the testator that his wife and children, the former in particular, should receive, as soon

as possible after his death, the benefit of the provisions of his will applying to them. An apportionment of the income from The Sanitube Company's stock, if delayed until said stock was sold, would obviously preclude the carrying out of this plan and intention. In our judgment, the facts and the provisions of the testator's will prevent the making of a fair and satisfactory temporary apportionment of income prior to a sale of the stock in question. Such an apportionment would, under the circumstances, be purely arbitrary and not based on any apparently recognized principle; nor would it be possible to make it under the second method above suggested, because the ordinary return on a trust investment valued at $60,000 would be entirely too small to make the annual payment provided for the widow under the terms of the will, while she remains unmarried.

In the fifth paragraph of the will, subsection (c), the testator, among other things, vested his trustees with the power to determine in their sole discretion whether some portion of income, expense, gain or loss should be apportioned to principal or income and to make such apportionment. This power was given to the *trustees,* and not to the executors who are called upon to pay the fees in issue, under question one.

While we do not feel that this is a case for application of the rule of apportionment generally, or that the will permits the executors to apportion in their discretion as if they were dealing with the assets of a trust estate already set up, nevertheless, we are of the opinion that the fees in question should be paid by the executors from the accumulated income, as such, because of the necessities of the case and in order to give reasonable effect to the testator's dominant intention. We recognize that such payment from income is not ordinarily made, and that before it is permitted either an express or implied intent to that effect should be found in the will. There is no such express direction in the will before us; but, in our judgment, it is reasonably to be implied in view of the nature of the testa-

tor's estate and of the provisions of his will. To come to a different conclusion would lead to an unreasonable sacrificing of The Sanitube Company's stock and, in effect, nullify said will.

The testator must have known that the only asset of his estate which could produce income of any large amount would be the stock of The Sanitube Company. The reasons advanced by the widow and by the representative of the minor children, for allowing such a payment of fees by the executors, seem to us sound under all the facts appearing in evidence when taken in connection with the testator's plain intent as expressed in his will. The *Boardman* case, *supra*, is authority for the holding that the testator's indebtedness may be paid from income rather than from principal if the facts warrant, and if the testator's intent to that end may reasonably be implied from the will. We find that to be the situation in the instant cause. We therefore answer the first question submitted in the affirmative.

Although the situation contemplated in the twelfth question has not yet arisen, it obviously will do so at once. The answer to that question is governed by our discussion of the first question, and said twelfth question is also answered in the affirmative.

The second question is as follows: "Is Irene Dorothy Harrison, the widow of the said testator, entitled under the provisions of subsection (e) (1) of said Fifth Paragraph of said last will and testament to an annual income of Two Thousand Seven Hundred Dollars ($2,700) or is she entitled thereunder to an annual income of Three Thousand Six Hundred Dollars ($3,600), and for what periods of time is she entitled to either of said annual incomes?"

Subsections (e) (1) and (2) of the fifth paragraph of the will bear upon this question. The third paragraph of the will referred to two life insurance policies, one for $5000 and one for $10,613, in both of which the widow had been named as beneficiary. It appeared in evidence that the amount paid

the widow under the first of said policies was $3835.38, because of a loan by the testator secured by said policy; and that the second of said policies had lapsed at the time of his death. Under these facts the widow contends that she is entitled to a payment from the estate of $3600 a year for a period of fifteen years from the date of the testator's death, or until she remarries.

It appeared in evidence, however, that on September 30, 1938 a so-called compromise agreement was entered into between the complainants and the widow whereby the former agreed to pay her from the estate at the rate of $2700 per year for three years and ten months after the testator's death, and the sum of $3600 each year for the remainder of the period. The agreement contained the following language: " . . . and the said Irene Dorothy Harrison hereby agrees to accept payments in these amounts in full and final satisfaction of any claims she has or may have for a larger annual income, expressly waiving hereby any claims for any larger annual income payment." This agreement has been carried out by the complainants.

It is not questioned that the complainants had authority to enter into such an agreement. Its provisions, under the circumstances, were fair and apparently in furtherance of the testator's intent as derived from a consideration of his entire will. We are of the opinion that the agreement is binding upon the widow. The second question is disposed of by this holding.

The third question has not yet in fact arisen. Whether it will ever come up is uncertain. In view of this fact, after consideration, we do not feel obliged to answer such question. In general, the same situation exists in regard to the ninth question. If it should come up later, it is not possible now to tell what form it will then take. We therefore decline to answer it at this time.

The fourth question is as follows: "May the trustees, within the meaning of the provisions of subsection (f) of said Fifth Paragraph of said last will and testament, pay the

income to which the children of the said testator are entitled to thereunder to the legal guardian of the estates of said children in equal shares?"

This question is not without some difficulty, due partly to the fact that in another paragraph of the will the testator appointed a guardian of the trust estate of his children. It is argued that this shows an intent on his part that any income accruing for the benefit of such children should be paid to said guardian. However, upon consideration, we are of the opinion that this argument is not conclusive in the face of the express language of the will that the trustees are *directed to apply* the income in question for the benefit of said children.

It has been held that where such language is used the trustees can not properly pay the income to the guardian of the person under disability. 2 Scott on Trusts, 969, and cases cited. The reasons advanced for this holding are that there would be a delegation of duty by the trustee if the payment was made to the guardian, and that the estate would be subjected to double commissions. Moreover, in the instant will the trustees are directed to apply the income for the benefit of the testator's children, share and share alike. This division is a responsibility imposed upon the trustees. In our opinion, the case of *Thurber* v. *Thurber*, 43 R. I. 504, owing to obvious differences, is not an authority for the proposition that the trustees should pay over the income in question to the guardian of the minors. We therefore answer the fourth question in the negative.

As to the fifth question, in our opinion, under the provisions of the will the trustees may invest the accumulations of income not required for the support and maintenance of the children. In the will the trustees are given broad powers in dealing with the trust estate.

In answer to the sixth question we are of the opinion that at the present time the trustees are required under the terms of the will to set up only a single trust of the residue of the estate, and not separate trusts for the widow and for the chil-

dren. The language of the will is consistent with the setting up of a single trust. The testator did not clearly provide for more. Whether or not it may become necessary later to set up more than one trust we do not now decide. Such matter will have to be determined when facts arise which properly raise that question, and such determination will depend upon the facts then in existence.

The seventh and eighth questions may be considered together. An examination of the entire will, in our judgment, shows a clear intent on the part of the testator that his widow be paid income each year after his death from the trust he created in his will. The amount of such payment varies according to certain specified conditions, but the intent is plain that the testator desired that, in any event, his widow should receive the payments provided for her benefit under the will. This appears to us to be his dominant intention.

Certain language used by the testator in subsection (e) (4) of the fifth paragraph of the will, empowering the trustees to pay over to his widow such portion of the trust estate necessary to produce her annual income as in their discretion may be required for emergencies of health and educational expenses, has obviously caused the propounding of the above questions. A seeming inconsistency between the above-mentioned provision and certain of the other provisions in the will relating to income payments to the widow is apparent. However, all these provisions should be so construed that they may be given effect, if reasonably possible.

In our opinion, the intention of the testator to provide annually for his widow a definite and fixed income according to circumstances set out in the will is so clear and dominant that he must have contemplated by subsection (e) (4) that any provision thereunder for emergencies and unusual expenses was to be in the nature of an invasion of the *corpus* in addition to her other fixed income. Our answer to the above question, therefore, is that any withdrawal

of principal from the trust estate under said subsection (e) (4) for the benefit of the widow and of the children for emergencies and unusual expenses should not be deducted from the income payable to the widow.

By reason of our answer to the sixth question, we are not called upon to answer the tenth question.

In substance, the eleventh question asks whether, if the trustees are satisfied that the testator's widow is in need of a portion of the trust estate for the purposes set out in and within the meaning of subsection (e) (4) of the fifth paragraph of the will, "shall said trustees sell said 200 shares of the capital stock of The Sanitube Company to provide therefor irrespective of the sacrifice thereof . . .?"

We feel that, at this time, we cannot properly answer the above question in its present form. The action of the trustees, under the authority given them by the above-mentioned subsection of the fifth paragraph of the will, must depend on the facts and circumstances existing at the time said trustees are called upon to act. Some of such facts and circumstances would be whether there were other assets in their hands available for the payments specified in that subsection, without requiring the sale of the shares of stock of The Sanitube Company; whether the exercise of the discretion of the trustees was sound and proper at the time, in view of the nature of the alleged emergency, the necessity of the suggested expenditures, and the condition of the trust estate; whether a contemplated sale of said stock would jeopardize the whole structure of the trust estate and substantially defeat the intent of the testator; and whether it would be necessary to sell the entire 200 shares, in any event. The answer to the said eleventh question therefore, in our opinion, for the reasons indicated, cannot be given in advance of the time when the trustees are called upon to act under said subsection.

On July 14, 1941, the parties may present a form of decree in accordance with this opinion.

*Huddy & Moulton, F. Harlan Flint, Edward Winslow Lincoln,* for complainants.

*Burdick, Corcoran & Peckham, William A. Peckham, Alexander G. Teitz,* for respondent Irene Dorothy Harrison.

*Henry M. Boss,* guardian *ad litem, pro se.*

*Harvey S. Reynolds,* guardian *ad litem pro se.*