276 P.2d 527

In the Matter of the ESTATE of Rudolph Luis BALKE, Deceased.

L. M. BYRD, individually, and as Executor of the Estate of Rudolph Luis Balke, Deceased, Appellant,

v.

FIRST NATIONAL BANK OF ARIZONA, Phoenix, Co-Trustee under the Will of Rudolph Luis Balke, Deceased, Appellee.

No. 5839.

Supreme Court of Arizona.

Nov. 15, 1954.

James E. Flynn and John F. Connor; Phoenix, for appellant.

Neil C. Clark, William C. Eliot and Ronald Webster, Jr., Phoenix, for appellee.

STANFORD, Justice.

This is an appeal from two orders and a decree involving the closing of the estate of Rudolph Luis Balke. The executor, L. M. Byrd, challenges that part of the order of the Superior Court which (1) disallows the payment of interest on special legacies and surcharges the executor with the interest previously paid; (2) forbids the enforcement of a lien on the California property devised to Mrs. Balke; and (3) orders the payment of $4000 attorney fees to former attorneys of record.

Rudolph Luis Balke died on March 30, 1929. In his will he made seven cash bequests totaling $91,000, established three $10,000 trusts, made a specific devise of property located in California, and established a residuary trust with the income going to his wife during her life and the corpus to a nephew and two nieces at her death. Appellant Byrd and the Phoenix Savings Bank & Trust Company were appointed co-executors. The latter resigned from its position in 1942 and since then appellant has been acting as sole executor. As will appear later, the legatees were widely scattered; half of them lived in Germany or Poland.

The will as a whole was clear and well-drafted, but Article Eighteen, set forth be-

low, gave authority to the executors to keep the estate open until the Balke Building could be sold for a satisfactory price and to pay interest on the specific legacies. The property was sold after some seventeen years; but even now, twenty-five years after Balke's death, Article Eighteen remains the center of bitter controversy. It reads:

"Eighteenth: I realize that in order to pay the legacies herein provided for, it will be necessary to sell the real estate at the northeast corner of Adams and First Avenue, Phoenix, Arizona, consisting of one hundred (100) feet fronting on Adams Street and extending from Adams Street north to the alley. I do not desire said property to be sacrificed by reason of a forced sale, and I hereby direct that unless said property can be sold at a price satisfactory to my executors within one year from the date of my death, then my estate may be kept open for such longer period as may be required in order that a satisfactory sale of said property may be made. I feel that said property should bring the sum of Two Hundred and Fifty Thousand Dollars ($250,000.00), but I do not set any price at which said property shall be sold by said executors. In the event my estate is not closed within one year from the date of my death, then I direct my executors, out of the income of my estate, to pay to the legatees hereunder, interest on their respective legacies, at the rate of six per cent (6%) per annum from the expiration of one year after date of my death, to the time of the closing of my estate."

The net book value of Balke's estate at the time of his death was approximately $220,000, but with the onset of the depression in 1930 the actual value was probably considerably less. In any event, the executors chose to hold the property mentioned in Article Eighteen and to pay interest on the legacies. The testator owed $22,000 to the New York Life Insurance Company; in 1931 the executors negotiated a new loan for $125,000 secured by a mortgage on the Balke Building, paid the debt, and made a partial distribution of the legacies designated in the will. This loan was paid back in full by 1947, with a total cost to the estate of $74,799.33.

The Balke Building was finally sold in 1946 for $262,000. In July of that year appellant filed a final account and petition for distribution. The Acting Polish Consul, claiming to represent the Polish legatees, raised objections which were settled in an order filed January 25, 1947. A supplemental account was filed on September 30, 1947 with revisions in accord with the earlier order. The court approved the account and at the same time granted a claim for attorneys' fees made by the Polish Consul. Both the Polish Consul and the executor appealed from parts of the court order. The dispute was carried to this court and

on May 23, 1949, a decision was handed down which, among other things, disallowed the claim for attorneys' fees. In re Balke's Estate, 68 Ariz. 373, 206 P.2d 732.

In 1950, after still further litigation had come to an end, the executor prepared another final account and petition for distribution which provided for interest amounting to $67,634.40 to be paid to the special legatees, and for a residuary trust of $20,598.72. This account was objected to by the First National Bank, co-trustee and appellee, on the ground that it allowed interest to be paid on the legacies when in fact there was no income fund from which to pay the interest. A hearing was held in November of 1950 and an opinion and order handed down by the Superior Court on June 9, 1951, sustaining the objection. A final decree of distribution, prepared by attorneys for the appellee, was then filed on July 10, 1951. It provided for payment of the specific legacies without interest, surcharge of $36,635.30 on the executor for the interest paid out, and creation of a residuary trust fund of some $84,111.28. A summary of the accounting upon which this decree was based follows.

### Final Decree of Distribution—1951

#### Corpus

| | | | |
|---|---|---|---|
| Cash on hand | 6,609.00 | | |
| Mortgage receivable | 7,500.00 | | |
| Cash from sale of properties | 265,214.75 | 279,323.75 | |

#### Deductions from corpus

| | | | |
|---|---|---|---|
| Specific legacies | 121,000.00 | 121,000.00 | 158,323.75 |

#### Income during administration

| | | |
|---|---|---|
| Rental income (net) | 193,310.44 | |
| Other income | 2,850.56 | 196,161.00 |

#### Deductions from income

| | | | |
|---|---|---|---|
| Property improvements | 2,203.10 | | |
| Funeral expenses | 3,204.50 | | |
| Liabilities incurred before death | 53,634.69 | | |
| Administrative costs | 103,457.92 | | |
| Litigation costs | 33,073.93 | | |
| Interest on mortgage | 74,799.33 | 270,373.47 | (74,212.47) |

#### Residuary

| | |
|---|---|
| | 84,111.28 |

The executor objected to this distribution because it did not allow interest on the specific legacies. He submitted the following report to demonstrate that an income fund did exist: (A comparison of the corpus and income deductions of the two reports will provide an insight into the present dispute.)

Final Account of Executor

(Motion for new trial 9/14/51)

Corpus

| | | | |
|---|---|---|---|
| Cash on hand | 6,609.00 | | |
| Mortgage receivable | 7,500.00 | | |
| Cash from sale of properties | 265,214.75 | 279,323.75 | |

Deductions from corpus

| | | | |
|---|---|---|---|
| Property improvements | 2,203.10 | | |
| Funeral expenses | 3,204.50 | | |
| Liabilities incurred before death | 53,634.69 | | |
| Administrative costs | 103,457.92 | | |
| Litigation costs | 28,952.09 | | |
| Specific legacies | 121,000.00 | 312,452.30 | (33,128.55) |

Income during administration

| | | | |
|---|---|---|---|
| Rental (net) | 193,310.44 | | |
| Miscellaneous income | 2,850.56 | 196,161.00 | |

Deductions from income

| | | | |
|---|---|---|---|
| Interest paid to legatees | 67,634.40 | | |
| Interest on mortgage | 74,799.33 | 142,433.73 | 53,727.27 |

Residuary

|  |  |  | 20,598.72 |
|---|---|---|---|

On May 20, 1953, a final opinion and order was handed down by the Superior Court denying the executor's motion to vacate the order of July 10, 1951. This denial is the subject of the present appeal.

To complete the general statement of facts, a brief history of the litigation surrounding Balke's estate must be set forth. Soon after testator's death Mrs. Balke waived her right to take as a legatee and

attempted to have herself declared the owner of one-half of the community property of the decedent and herself. This action terminated in 1930 against Mrs. Balke. Then Mimi Wille, a niece of the testator, attempted to have the will set aside on the ground of want of testamentary capacity of the decedent. This suit was dropped in July of 1930, and a settlement was made with court approval. In a subsequent action the executors were named as parties to a fraudulent scheme in which a Mr. Paar was said to have caused Mrs. Balke to assign her interest in a note given by the testator. In a decree in 1932 the executors were absolved and the assignments were cancelled; in the same order Mrs. Balke had her rights restored as legatee under the will.

In 1942 the executor objected to the size of the fee granted to co-executor Phoenix Savings Bank and Trust Co. The fees were upheld by this court in Byrd v. Phoenix Sav. Bank & Trust Co., 62 Ariz. 474, 158 P.2d 657. The final round of major litigation ended in 1949 when this court denied a claim for fees by the Consul General of Poland. In re Balke's Estate, supra. More facts concerning this series of suits will be interjected as they are relevant to the discussion of the points of law.

## I. The Income Fund

We now turn to the principle point of dispute, the finding by the Superior Court " * * * that all payments made by the Executors on the specific legacies have been made from capital assets, or from money borrowed on the capital assets as security, and that all such payments have been made in advance of any valid decree of distribution and must be taken and treated as payments on the face value principal sum of the legacies."

This finding rests upon the determination that

" * * * the gross income of the estate from all sources was wholly insufficient to meet the interest charge on the loan and pay the costs and expenses of administration, and that the *corpus* of the estate was being steadily absorbed by admininstration costs in excess of income.

\* \* \* \* \* \*

"*There was no income out of which interest on the special legacies could have been paid, or out of which it can now be paid.*" (Emphasis supplied.)

It is apparent that the Superior Court charged the claims against the estate and the administration expenses against the income, with the result that there was no income fund from which to pay interest as dictated by Article Eighteen of the will. The executor, in his reports, deducted the claims against the estate and the administration expenses from the corpus, and had ample income from which to pay the interest on the special legacies. The issue is clear. Can the expenses of administration be charged against property income earned

during the administration of an estate when there is a provision in the will specifically disposing of such income? The answer, just as clearly, is no.

We have found no authority for appellee's contention that even where there is a contrary intent disclosed in the will, the interim income should be used to pay expenses.

The annotation in 135 A.L.R. 1322 reads:
"The courts have generally adopted the rule that, at least in the absence of a contrary intention disclosed in the will, or circumstances which, in order to give effect to the controlling purpose of the testator, call for the application of a contrary rule, the expenses of administering the estate prior to the establishment of the trust, and the fees of the executor or of attorneys for the estate, for services rendered in the administration of the estate prior to the establishment of the trust, are chargeable to the corpus of the estate, which is ultimately to form the trust, and not to its income accruing during the period of administration preceding the establishment of the trust."

In the instant case not only is there an "absence of a contrary intention" but there is a specific provision that the income is to be used for some other purpose.

The rule quoted above has been recognized by many courts. Industrial Trust Co. v. Harrison, 67 R.I. 131, 21 A.2d 254, 135 A.L.R. 1312; In re Williamson's Estate, 38 Wash.2d 259, 229 P.2d 312; In re Schiffmann's Estate, 86 Cal.App.2d 638, 195 P.2d 484; In re Feehely's Estate, 179 Or. 250, 170 P.2d 757, 166 A.L.R. 420; 33 Am.Jur., Life Estates, Remainders, and Reversions, Sec. 424.

In defense of the lower court's decision, appellee relies heavily on Industrial Trust Co. v. Harrison, supra [67 R.I. 131, 21 A.2d 260]. Before analyzing this case, it must be pointed out that there was *no provision in the will for the disposition of the interim income*. The testator had set up a trust of corporate stock with the income to his wife for life and remainder to his children. The court held that since the stock could not be sold except at a great loss, the administration expenses could be paid out of the income. The court recognized the general rule but held that " * * * to give reasonable effect to the testator's dominant intention * * * ", the exception should be applied and the income fund used. The court said:

" * * * We recognize that such payment from income is not ordinarily made, and that before it is permitted either an express or implied intent to that effect should be found in the will. There is no such express direction in the will before us; but, in our judgment, it is reasonably to be implied in view of the nature of the testator's estate and of the provisions of his will. * * * "

In re Feehely's Estate, supra, although not cited by the appellee, is an instance where property to be put in trust was bringing in a good return (25% a year) and the court directed that the income be used to pay administration expenses in order to prevent a forced sale. Again, there was no contrary intent expressed in the will and the court emphasized the importance of furthering the intent of the testator.

■ There is one argument advanced by appellee which merits consideration: even if the testator provided for payment of interest to the legatees from the income fund, the over-all intent expressed in the Will will be nullified if the executor is allowed to pay 6% interest for sixteen years on all the specific legacies. The difference between the residuary fund of $20,598.72 reported by the executor and $84,111.28 determined by the lower court is found in the $67,634.40 paid in interest to the legatees, plus $4,121.84 attorney fees. If no interest on the legacies is allowed, there will be a sizeable trust fund for Mrs. Balke.

The briefs point out that although Mrs. Balke had lived with the testator during the time much of his property had been accumulated (1911–1927), at the time of Balke's death she was not married to him. The marriage had been annulled and a property settlement agreed upon in 1927. This circumstance would render pure folly any attempt to fabricate an overriding "intent" of the testator in order to avoid the clear wording of Article Eighteen and give preference to Mrs. Balke as the beneficiary of the residuary trust.

An income fund did exist, and the legatees are entitled to interest on their gifts. This being the case, the executor should not have been surcharged for interest paid out.

## II. The Lien

In 1930, after waiving her rights under the will, Mrs. Balke attempted to have it set aside and to take one-half of Mr. Balke's community property as the surviving spouse. This move failed. When Mrs. Balke was subsequently (in 1932) reinstated as a legatee under the will, the court ordered that she make restitution to the executors in the amount of $17,000 as reimbursement for expenses incurred in the will contest. Of this amount $2,600 was to be paid immediately and the balance of $14,400 was to be repaid out of the net income of the residuary trust as such income became due to Mrs. Balke. The court then directed that payment be secured

" * * * by a lien reserved in the said Executors and Trustees upon the real property bequeathed by Clause Thirteen of the said Last Will and Testament to the plaintiff, Elsa Wille Balke, situated in the City and County of Los Angeles, State of California, and being described as follows: * * The said amount of $14,400.00 shall be repaid solely out of said net income, but the full amount thereof, or any unpaid portion thereof, and accumulated

**110**

interest, shall mature and become immediately due and payable upon the death of said Elsa Wille Balke; the said property situate in the State of California to be distributed to her by the Superior Court of the State of California, in and for the County of Los Angeles, as such court may approve, and shall be distributed subject, however, to the lien reserved by this decree." Cause No. 34987A, July 5, 1932.

In his final account and report and petition for distribution filed July 8, 1946, executor-appellant requested that the lien be released and deemed paid. In an order filed January 25, 1947 the Superior Court decreed

"* * * that the petition to waive and cancel said claim and lien of said estate against the said Elsa Wille Balke, now Elsa Balke McNamara, be, and the same hereby is denied."

On September 30, 1947, in response to an oral petition by Mrs. Balke, the lower court reversed itself and cancelled the lien of the estate against her.

This order was appealed from and in May of 1949 this court, in In re Balke's Estate, supra, held that the lower court was *without jurisdiction to forgive and cancel* the estate's claim because no appeal had been taken from the January order and it had consequently become final and conclusive.

In the final decree of distribution filed July 10, 1951, the lower court stated:

"2. That the judgment of the Superior Court of Maricopa County, Arizona in cause No. 34987–A is not and never was a lien upon the home of Elsa Wille Balke in Los Angeles, California, * * * and the Executor under the Will of said decedent, and the First National Bank of Arizona, Phoenix, and L. M. Byrd, as trustees under the said will, are hereby enjoined and restrained from attempting *to foreclose or in any wise enforce the* said judgment against Elsa Wille Balke, * * *."

Appellant appeals from that part of the order forbidding the enforcement of the lien on the California home on the ground that the matter is res judicata. It is contended that our 1949 decision, In re Balke's Estate, supra, is controlling as to the validity of the lien ordered by the trial court in 1932.

A careful reading of the 1949 opinion does not bear this out. We were there dealing with a point raised on the cross-appeal of the Polish Consul General relative to the January order which "denied the petition to waive the claim and lien of said estate against the widow", and the subsequent September order that overrode the previous denial by vacating and setting aside the estate's original claim and lien. As no appeal had been taken from the order of January 25, 1947, we held that

"* * * insofar as the September order purports to forgive and cancel

the estate's claim against the widow, it is null and void, and must be set aside as having been entered without jurisdiction."

No contention was made on that appeal that the trial court in the year 1932 was without jurisdiction to create this lien. This is the first time that the question has been presented.

■ Clearly, an Arizona court does not have jurisdiction to create a lien on property located in California. Fall v. Eastin, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65; Restatement, Conflicts of Law, Section 240 (1934); Annotation, 51 A.L.R. 1081. The lower court was therefore correct in determining that there is not and never was a valid lien upon the home of Elsa Wille Balke in Los Angeles, California.

### III. Attorneys' Fees

The former attorneys of record were awarded $4,000 for services rendered from September, 1947 to June, 1951. This included the handling of the Polish Consul appeal (In re Balke's Estate, supra) plus the preparation and filing of the first and second petitions for final decree of distribution.

Appellant objects to this amount and, after assuming that the award was based primarily on the carrying of the Polish Consul appeal, argues that a fee of 53% of the $7,500 claimed by the Polish Consul is arbitrary and excessive, especially when there was no contingency involved and .in

view of the fact that the same counsel had already received $45,672.83 for services rendered to the estate.

■ The lower court in its opinion and order (dated May 18, 1953) stated:

"The only statement made by the Executor to the Court with reference to such attorneys' fees is an allegation in the account and report that he and the attorneys had not agreed thereon. Evidence on behalf of said attorneys was introduced at $5,000.00 as a reasonable fee, which said evidence was in no way controverted by the Executor, nor was any showing made by him, or any summation given of the work involved in handling said appeal and performing such services necessary or incident to the closing of said estate."

We said in In re O'Reilly's Estate, 27 Ariz. 222, 231 P. 916, 918:

"What would constitute a reasonable fee in a given case is a matter which is peculiarly within the knowledge of the court before which the estate was probated, and, in the absence of the abuse of sound discretion of the court sitting in probate, this court, as it has many times held, will not disturb the findings of the lower court."

See also Byrd v. Phoenix Sav. Bank & Trust Co., supra.

■ Appellant's authority goes to the fixing of the fee for the carrying of an appeal. After his initial reference to the

other services rendered since 1947, he does not mention them. We cannot use appellant's cases as authority for reversing an award which was actually based on several years of varied service. The lower court received testimony as to a reasonable fee and based its determination on the evidence. The appellant did not at that time avail himself of his opportunity to rebut the evidence. His claim now that the fee was "arbitrary and excessive" is without merit.

Those sections of the lower court order pertaining to the California lien and the award of attorneys' fees to former attorneys of record are affirmed.

Those parts of the order of the lower court disallowing the payment of interest on special legacies and surcharging the executor with interest previously paid on the special legacies are reversed, with directions to order payment of interest on the unpaid portions of the specific legacies until the day they are paid. Should the income fund prove inadequate to furnish the full amount due, that money which is available is to be prorated among the legatees.

■ Since both parties have faithfully and dutifully carried out the tasks entrusted to them as arms of the court, all costs and fees in connection with this litigation shall be borne by the estate.

PHELPS, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.